WAYNE FLYNN *v.* STATE OF INDIANA

[No. 2-377A71. Filed August 24, 1978.]

*Stephen M. Sherman*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Dennis K. McKinney*, Deputy Attorney General, for appellee.

YOUNG, J.—Appellant Wayne Flynn ("Flynn") appeals from his conviction for unlawful possession of a controlled substance, IC 1971, 35-24.1-4.1-7 (now repealed). We reverse.

On this appeal Flynn raises three errors in his brief. First, he alleges error for failure of the trial court to sustain his objection to a certain statement made by the deputy prosecutor during final argument. Next, he complains that the evidence is insufficient to support the verdict of the jury. Finally, he complains that the sentence he received is excessive.

We will address only the first error raised by Flynn, the alleged prosecutorial misconduct. Our consideration of this alleged error requires that we review the evidence to determine whether the statement made by the deputy prosecutor during final argument was supported by the evidence. *Evans v. State* (1975), 163 Ind.App. 351, 323 N.E.2d 672, 676. Accordingly, we turn our attention to the evidence.

The State's evidence was presented chiefly through the testimony of two police officers. This testimony reveals that for a period of about ten days one of the officers had conducted a surveillance of a large house on the north side of Indianapolis. The house contained four apartments. On the basis of this surveillance a search warrant was obtained. The two officers, in company with other policemen, executed the warrant late in the evening of September 3, 1976. After knocking for ten or fifteen minutes and identifying themselves, the officers entered. They found Flynn and his girlfriend in bed. A search of the bedroom revealed an unmarked bottle containing approximately six biphetamine capsules. The bottle apparently had been secreted behind the mirror of a dresser.

When the bottle was displayed to Flynn, he made no comment. The officers testified that the defendant's eyes were glassy; he talked slow-

ly, and appeared to be under the influence of drugs. One of the officers acknowledged, however, that the defendant's apparent stupor could indicate that the defendant had just awakened from sleep.

Flynn, for his part, testified in his own behalf and also offered the testimony of both his roommate and the roommate's girlfriend. The girlfriend revealed that she had obtained a prescription for the same type of capsules that were found in the bedroom. She further testified that she had visited defendant's roommate a few days before the search warrant was executed. According to her testimony, she inadvertently left behind the biphetamine capsules. She said that the number of capsules she misplaced was about the same amount which the officers found in the apartment. When she discovered that Flynn had been arrested for alleged unlawful possession of the capsules, she contacted Flynn's attorney on her own initiative to explain the matter.

Flynn's roommate also took the stand. He stated that he and Flynn shared the apartment and each paid part of the rent. At different times both roommates occasionally occupied the bedroom. This witness denied knowing about the presence of pills in the apartment. Following Flynn's arrest, he did recall that his girlfriend mentioned the pills belonged to her.

The defendant, in his own behalf, denied ever having possession of the capsules. He and his roommate had lived in the apartment for only about six days before the arrest. On the day he was arrested, he had worked about ten hours. On return to his apartment, he consumed some beer and wine. Later in the evening he turned to bed and was asleep when the police arrived to execute the warrant. The defendant also explained that his roommate had possession of the bedroom most of the time.

We turn now to the issue before us and consider the alleged prosecutorial misconduct. During final argument the deputy prosecutor directed the following statement to the jury:

"I am tired of drugs on the streets of this city and I want to get the drug dealers off. I am not here to put an innocent man in prison. If you believe he is an innocent man unjustly accused, then turn him loose, but he is not. *He is a drug dealer*, and I think from the evidence you have heard you can deduce that." (Emphasis added.)

Flynn's trial attorney objected at this point for the reason that the statement was not supported by the evidence. The objection was overruled. Flynn's timely objection preserves this assigned error for our review. *Misenheimer v. State* (1978), 268 Ind. 274, 374 N.E.2d 523, 532.

From our review of the evidence we are constrained to find merit in Flynn's objection. In the case at bar the evidence was vigorously disputed as to whether Flynn ever possessed a controlled substance. Consequently, there was absolutely no warrant for the deputy prosecutor to label Flynn a "drug dealer." *Adler v. State* (1961), 242 Ind. 9, 175 N.E.2d 358, 359; *Hadley v. State* (1975), 165 Ind.App. 416, 332 N.E.2d 269, 272.

It is, of course, proper for an attorney to argue for any position or conclusion based on his analysis of the evidence. Code of Professional Responsibility, D.R. 7-106(C)(4). Conversely, the attorney may not assert his personal opinion as to the guilt of a defendant. *Id.* These rules play no small role in the administration of justice. Flynn was entitled to be tried on the evidence presented in court. The deputy prosecutor's completely unfounded charge that the defendant is a "drug dealer" may suggest to the jury that the deputy prosecutor possessed undisclosed evidence bearing upon other possible crimes by the defendant. This error is especially serious where, as in the case at bar, the evidence is "close" on the charge for which Flynn was being tried. *Evans v. State* (1975), 163 Ind.App. 351, 323 N.E.2d 672, 676. Justice Sutherland aptly captured the issue in *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, wherein he stated:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as it obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." 295 U.S. at 88, 55 S.Ct. at 633.

With specific reference to the facts in the case at hand, we note that a similar issue was before this Court in *Hadley v. State, supra.* In *Hadley* the prosecutor had attempted to interject the belief that the defendant was engaged in drug trafficking. *Id.* 332 N.E.2d at 272. This Court said that such prosecutorial misconduct, alone, would constitute reversible error, citing *Adler v. State, supra; see also United States v. Whitmore* (1973), D.C.Cir., 480 F.2d 1154; *United States v. Wasko* (1973), 7th Cir., 473 F.2d 1282.

The State, for its part, claims that the statement by the prosecutor was "expressly" based upon what was in evidence. The State makes no citation to the record to support this claim and our own review of the record compels us to conclude that the statement was unsupported by the evidence. The State's second line of argument is that it is a "likely inference" that Flynn was selling the capsules because he denied he used the capsules himself. We disagree. In our opinion no reasonable inference could be drawn that Flynn is a "drug dealer" absent any evidence at all that he engaged in such transactions. *Cf. United States v. Welebir* (1974), 4th Cir., 498 F.2d 346, 351 (In closing argument, prosecutor may justifiably refer to defendant as a "big peddler" where testimony revealed that equipment found in defendant's apartment had a capacity for the manufacture of 50,000 doses of amphetamines).

Accordingly, we hold that it was error for the trial court to overrule Flynn's objection to the deputy prosecutor's statement and that the statement placed Flynn in such grave peril as to entitle him to a reversal and a new trial. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312; *see Craig v. State* (1977), 267 Ind. 359, 370 N.E.2d 880, 884; *Antrup v. State* (1978), 175 Ind.App. 636, 373 N.E.2d 194, 198; *Evans v. State, supra.*

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 379 N.E.2d 548.