Robert OLDHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0203–CR–123.

Court of Appeals of Indiana.

Dec. 18, 2002.

---

Scott C. Campbell, Campbell & Hendren, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Robert Oldham appeals his convictions of Murder and Carrying a Handgun Without a License.[1] We reverse.

### Issues

Oldham raises seven issues, which we consolidate and restate as:

I. Was Oldham's Murder conviction supported by sufficient evidence?

II. Was Oldham subjected to fundamental error when an investigating police officer testified that he obtained a warrant to search Oldham's home because he thought Oldham committed the crimes in question, and when the State in-troduced evidence of items found during the search of the home?

III. Is Oldham entitled to a new trial on the basis of prosecutorial misconduct?

IV. Did the trial court abuse its discretion when it replaced an ill juror?

V. Do Oldham's convictions violate the double jeopardy clause of the Indiana Constitution?

### Facts and Procedural History

On August 29, 1999, at about 2:00 in the morning, George Brown was out looking for his girlfriend Latonya Jones when he observed a blue four-door Plymouth Colt occupied only by its driver pass by a group of people that included Oldham near the intersection of 36th Street and Kenwood Avenue in Indianapolis. Several minutes later, Jones, who was out for a walk, saw the Colt pass her on 36th Street. This time, there was one passenger, seated in the back. Seconds later, Jones heard gunshots from the direction the car had traveled. Russell and Carol Phelps, who lived on the southwest corner of 36th Street and Graceland Avenue, were awoken by the gunshots. Mr. and Mrs. Phelps looked out their window and saw that the Colt had crashed into her fence. Mrs. Phelps saw a black male with a stocky build wearing a short-sleeved red and white-checkered short-sleeved shirt leaning into the vehicle. Mr. Phelps heard the man say, "I thought I'd get you." The man then walked away on 36th Street from Graceland Avenue toward Capitol Avenue. Jones, who had heard the gunshots but did not see the shooting or the crash, observed Oldham running back on 36th Street away from Graceland Avenue toward Capitol Avenue.

---

1. Ind.Code §§ 35–42–1–1 and 35–47–2–1, respectively.

Police officers were called to the scene, and found a man later identified as Benjamin Brownlow with gunshot wounds to his side and the back of his neck. Brownlow was taken to a nearby hospital where he died. Officers recovered two palm prints on the exterior of Brownlow's vehicle, which were later determined to belong to Oldham, and which were quite fresh. The police took the vehicle to a secure location, where the car was thoroughly searched. On September 1, 1999, police officers searched Oldham's residence pursuant to a warrant and found a recently dry-cleaned short-sleeved red and white-checkered shirt. On September 2, 1999, Brownlow's sister Deborah retrieved the Colt from the police department's secure location. When she opened the front passenger door, a pager fell out. Police officers later determined that the pager belonged to Oldham.

On October 6, 1999, the State filed a delinquency petition against Oldham, who was fifteen years old at the time of Brownlow's murder, alleging that Oldham had committed acts which, if committed by an adult, would have constituted Murder and Carrying a Handgun Without a License. At the request of the State, the trial court waived its juvenile jurisdiction, and the State charged Oldham with Murder and Carrying a Handgun without a License as an adult. A jury trial began on January 14, 2002. During its deliberations, the jury sent the trial court two notes. One note told the judge that the jury was deadlocked and the other indicated that one juror wished to be excused because the stress of deliberations was aggravating the juror's hypertension. The judge addressed the juror's health concerns first, because he suspected that settling that matter might resolve any issues regarding the jury's ability to continue. The juror stated that he wasn't feeling well and was uncomfortable, and the trial court released the juror with the agreement of the parties. After the ill juror was dismissed, the jury advised the court without further discussion that they were ready to continue their deliberations and believed that their time would be "well spent." Oldham was convicted of both charges. On February 14, 2002, the trial court sentenced Oldham to fifty years on the Murder count and to one concurrent year on the gun charge. Oldham now appeals.

### Discussion and Decision

### I. Sufficiency of the Evidence

#### A. Standard of Review

 Oldham claims that the State failed to prove his guilt with adequate evidence. When we review a claim that a conviction is not supported by sufficient evidence establishing the defendant's guilt, we generally may not reweigh the evidence or question the credibility of witnesses. *Doty v. State*, 730 N.E.2d 175, 180 (Ind.Ct. App.2000). That is the function of the fact finder. *Id.* We must affirm a conviction if the finder of fact heard evidence of probative value from which it could have inferred the defendant's guilt beyond a reasonable doubt. *Graham v. State*, 713 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied.* When making this determination, we consider only the evidence, and all reasonable inferences to be drawn from that evidence, favorable to the verdict. *Id.*

#### B. Analysis

 To convict Oldham of Murder, the State was required to prove beyond a reasonable doubt that Oldham knowingly or intentionally killed Brownlow. *See* IND. CODE § 35–42–1–1(1). Oldham argues that there was not enough evidence to prove that he was the person who killed Brownlow. A murder conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241

(Ind.1999). Such circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.* A defendant's mere presence at the crime scene, with the opportunity to commit these crimes, is not a sufficient basis on which to support a conviction. *See Fry v. State,* 748 N.E.2d 369, 373 (Ind.2001). However, the defendant's presence at the scene in connection with other circumstances, such as companionship with the one engaged in the crime, and the course of conduct of the defendant before, during, and after the offense, may raise a reasonable inference of guilt. *Hampton v. State,* 719 N.E.2d 803, 807 (Ind.1999).

■ The evidence in this case indicated that shortly before the murder, Brownlow was driving his Plymouth Colt down 36th Street with a male passenger in the back of the car. Brownlow was then shot in the neck and side, and his vehicle crashed into a fence. A stocky black male wearing a red and white-checkered shirt was observed immediately after the gunfire and crash telling Brownlow he thought he'd "get" him. (Tr. 62.) When police arrived, only Brownlow was in the car. Oldham fit the description of the murderer. He is a black male, and at five-feet five inches tall and 215 pounds, Oldham would be considered stocky. He also owned a red and white-checkered shirt that a witness identified as looking like the one worn by the murderer. Moreover, he was observed running from the area of the crime immediately after it occurred. A witness saw the killer leave the scene of the crime in the direction of 36th Street and Capitol Avenue, and immediately thereafter another witness saw, from another vantage point, Oldham running from the vicinity of the murder toward the same location. The evidence also indicated that Oldham had been inside Brownlow's car. Oldham's palm prints were found on the vehicle. According to the police, the palm prints had not been on the vehicle long when they were found. Oldham admitted that he spoke with Brownlow, a man he did not know, through the vehicle's window before the murder, but denied having been inside the car. However, Oldham's pager, which Oldham said he kept either on his belt or in a pocket, was found inside the vehicle.

The jury was entitled to infer from the evidence that the stocky black male wearing the red and white-checkered shirt who said he'd "get" Brownlow was the killer, and that he murdered Brownlow while a passenger in his vehicle, causing the crash. The jury could further deduce from the evidence of Oldham's palm prints and the dropped pager that Oldham had been in Brownlow's vehicle that evening. Finally, given the facts that Oldham was a stocky black male who owned a red and white-checkered shirt just like the one worn by the murderer, and was seen running from the area of the crime immediately after it occurred, the jury was entitled to conclude that Oldham was the murderer. Oldham's conviction for Murder was supported by sufficient evidence.[2]

2. Oldham rightfully does not challenge the sufficiency of the evidence supporting the gun charge, because the evidence was sufficient to support this conviction. The offense of Carrying a Handgun Without a License requires proof the defendant carried a handgun on or about his person, away from his dwelling or business. IND.CODE § 35–47–2–1. Once the State proves these elements, the burden shifts to the defendant to establish that he possessed a valid license. *Harris v. State,* 716 N.E.2d 406, 411 (Ind.1999). Because the jury was entitled to infer that Oldham killed Brownlow with a handgun that was never recovered, the jury could further infer that Oldham possessed a handgun away from his home or business immediately prior to, during, and after the murder away from his home or

## II. Admission of Evidence

### A. Standard of Review

 Oldham contends that the trial court erred by admitting certain evidence during trial. A trial court has broad discretion in ruling on the admissibility of evidence, and on review, we will only disturb a trial court's ruling if it appears that the trial court has abused its discretion. *Ealy v. State*, 685 N.E.2d 1047, 1050–51 (Ind.1997). "Moreover, a claim of error in the admission or exclusion of evidence will not prevail on appeal 'unless a substantial right of the party is affected.' " *Kellett v. State*, 716 N.E.2d 975, 978 (Ind.Ct.App. 1999) (quoting Evid.R. 103(a)). In determining whether error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *McClain v. State*, 675 N.E.2d 329, 331 (Ind.1996). Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted. *Id.* at 331–32.

 To preserve an issue regarding the admission of evidence for appeal, the complaining party must have made a contemporaneous objection to the introduction of the evidence at trial. *Williams v. State*, 489 N.E.2d 594, 600 (Ind.Ct.App.1986). Otherwise, the error is waived and need not be addressed by the reviewing court unless the error is "fundamental." *Carter v. State*, 754 N.E.2d 877, 881 (Ind.2001), *reh'g denied.* In *Carter*, our supreme court summarized the application of the fundamental error doctrine as follows:

> We recently re-emphasized the extremely narrow applicability of the fundamental error doctrine in *Taylor v. State*, 717 N.E.2d 90, 93–94 (Ind.1999). A fundamental error is 'a substantial, blatant violation of basic principles of due pro-

cess rendering the trial unfair to the defendant.' *Id.* at 93. It applies only when the actual or potential harm 'cannot be denied.' *Id.* (citing *Ford v. State*, 704 N.E.2d 457, 461 (Ind.1998)). The error must be 'so prejudicial to the rights of a defendant as to make a fair trial impossible.' *Taylor*, 717 N.E.2d at 93 (quoting *Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995)). An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief. It is otherwise adequate to note that the claim has not been preserved.

*Id.*

### B. Analysis

#### 1. Officer's Opinion of Guilt

 Oldham argues that investigating police officer Thomas Lehn impermissibly testified that he believed Oldham was guilty. During Officer Lehn's testimony regarding the development of his investigation into the murder, Officer Lehn and the deputy prosecutor had the following exchange:

Q: Now, at some point you also got a search warrant to get the full fingerprints, palm prints of the Defendant Robert Oldham, is that correct?

A: Yes, sir, that is correct.

Q: And is that after you started piecing together the case regarding the pager and regarding the anonymous call and regarding the shirt and that kind of thing.

A: Yes, sir, as things like you said came together is when I got the limited search warrant to obtain his fingerprints and photographs.

Q: Did—you also got a description from the Phelps[es] about the general

business. Further, Oldham did not claim to

have a license for the murder weapon.

size of the person that they saw beside the car, is that correct?

A: Yes, that is correct.

Q: *Did that also lead you to believe that it was the Defendant who murdered Benjamin Brownlow.*

A: *Yes, I did believe that based upon their description.*

Q: So you did a lot more work as time went on before you actually finally arrested the Defendant, is that correct?

A: Correct. The investigation was ongoing at the time, you know, prior to the arrest, during the arrest and continued for at least another year and a half to two years after the arrest, or a year and a half after the arrest.

(Tr. 102–103) (emphasis added).

█ Pursuant to Evidence Rule 704(b), a witness may not offer an opinion concerning guilt or innocence in a criminal case. Officer Lehn therefore should not have been permitted to testify about his belief that Oldham killed Brownlow. Oldham, however, failed to object to the testimony in question, and the issue is waived. He claims that the officer's testimony subjected him to fundamental error. We cannot agree. A police officer's testimony that he came to believe in the course of his investigation that the defendant committed the crime is not much more prejudicial to the defendant than the simple fact that the police arrested the defendant for the crime, or that the State has charged and seeks to convict the defendant for the crime. Jurors in a criminal trial know without having to be told that the accused has been named as a defendant because the police concluded that there was probable cause to believe the defendant committed the crime, and because the State believes that there is at least probable cause to bring the matter to trial and to seek the defendant's conviction. While the testimony of a police officer that the defendant

became a suspect and was arrested because the officer thought the defendant committed the crime might be more prejudicial under certain circumstances, Oldham has failed to establish that Officer Lehn's comments made a fair trial impossible. The admission of Officer Lehn's testimony was not fundamental error.

### 2. Business Cards and Novelty Photograph

When the police searched Oldham's residence, they found business or calling cards bearing the name "Rob Goddie" and "Goddie" and the phrases "Tre Block" and "Dope City." The cards listed cell phone and pager numbers. Police also found a novelty photograph of Oldham and another youth with superimposed brightly-colored printed text bearing the words "America's Most Wanted," "Wanted for: robbery, assault, arson, jaywalking," "Considered armed and dangerous," and "Approach with extreme caution." (Exhibits, p. 41, Ex. 26.) These items were admitted upon Oldham's pre-trial stipulation. Oldham claims that these items constituted character evidence inadmissible under Evidence Rule 404(a) and evidence of prior misconduct inadmissible under 404(b).

█ Oldham acknowledges that he did not object to the exhibits as they were offered, but argues that we should address his claims despite his waiver because he was subjected to fundamental error. Oldham did not, however, simply neglect to object to the evidence as it was being introduced. He expressly agreed to the admission of the evidence, and thus invited the very error he now claims is fundamental. Invited errors are not subject to appellate review, and a party therefore may not invite error, and then subsequently argue that the error requires reversal. *Kingery v. State,* 659 N.E.2d 490, 494 (Ind.

1995). The Indiana Supreme Court has suggested that this kind of invited error is not fundamental error. *See id.* (noting that a defendant's initial introduction of improper evidence of past crimes invited any error, and that "[t]his type of error is not fundamental error.") At other times, however, our supreme court and this court have chosen to determine whether errors unavailable for review by virtue of their invitation were nevertheless fundamental error. *See Roach v. State,* 695 N.E.2d 934, 942 (Ind.1998); *Cuto v. State,* 709 N.E.2d 356, 361 (Ind.Ct.App.1999). We will thus address Oldham's contention that the admission of the evidence in question amounted to fundamental error.

Pursuant to Evidence Rule 404(a), evidence of a defendant's character or character trait is not admissible to prove that the defendant acted in conformity with that character. In addition, Evidence Rule 404(b) specifically bars the admission of evidence of crimes, wrongs or other bad acts allegedly committed by the defendant to prove the defendant's character, and forbids the use of this kind of evidence to show that the defendant acted in a manner consistent with that character. Oldham argues that the business cards and the novelty card gave rise to the impermissible inference that he was a person with a dangerous and criminal character, that he had committed crimes and bad acts in the past, and that the murder of Brownlow was entirely consistent with his character and prior bad acts.

The State characterizes the business cards and the novelty photograph as harmless gag items, and argues that the items, which were discovered by the police in close proximity to the red and white-checkered shirt, were admitted for the permissible purpose of establishing Oldham's ownership and control of the shirt. However, ownership of the shirt, which was found in Oldham's own bedroom, does not appear to have been seriously contested, and the State did not attempt to link Oldham's ownership of the shirt with the location of the cards and photograph at trial. Rather, when Oldham took the stand to testify, the State questioned him about the cards and the photograph as follows:

Q: Let me ask you about this photograph here; this was found in your room, is that right?

A: Yes, sir.

Q: Do you consider yourself to be armed and dangerous?

A: No, sir.

Q: These four business cards in the State's Exhibit number 25, these were also found in your room, right?

A: Yes, sir.

Q: And this is you, this is the way you've labeled yourself as Rob [Goddie]?

A: Yes, sir.

Q: And that was after John Ghotti [sic], the mafia figure?

A: He don't spell it nothing like that. I went by it, but that is just a name.

Q: That's just a name?

A: Yes, sir.

Q: But you went by his name, though, right?

A: Yes, sir.

Q: And that's because he's also kind of a dangerous figure, right?

MR. TAMBASCO: Objection, Your Honor.

THE COURT: Sustained.

(Tr. 124.) This exchange clearly shows that contrary to the State's argument, the prosecutor did not present the items as harmless novelty items, but tried to use the business cards and the novelty photograph to paint Oldham as a dangerous criminal. This evidence was obviously in-

admissible under Evidence Rule 404[3], and the only thing more surprising than Oldham's counsel's failure to object to the prosecutor's questions earlier was his stipulation to the admission of the exhibits in the first place. The question we are faced with here is whether the admission of this improper character evidence amounted to fundamental error. It did.

A defendant's fundamental rights are implicated when the State introduces evidence of the defendant's character and prior bad acts to prove that the defendant committed the crime for which he is being tried. As the Indiana Supreme Court stated in *Lannan v. State*, 600 N.E.2d 1334, 1338 (Ind.1992), "the general rule prohibiting the state from offering character evidence merely to show the defendant is a 'bad guy' and therefore probably committed the crime with which he is charged remains as fundamental today as ever." As our supreme court stated in another case,

> The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ('uncharged misconduct') will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses the danger that the jury will convict the defendant solely on this inference.

*Penley v. State*, 506 N.E.2d 806, 808 (Ind. 1987). In *Hardin v. State*, 611 N.E.2d 123, 127-28 (Ind.1993), the court explained that the rationale for the rule prohibiting the admission of bad act and character evidence to prove guilt "is predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed." When

this kind of evidence is admitted at trial as proof of guilt, "a defendant would be forced to refute these allegations as well as defend against the crime specifically charged," and "the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused." *Id.* at 128.

Of course, the erroneous admission of character and uncharged bad act evidence to prove guilt does not always require reversal. Such errors are harmless and not fundamental when, for example, the defendant pursues the improperly opened issue of his character by testifying about the matter, and when there is overwhelming evidence of the defendant's guilt. *Jones v. State*, 619 N.E.2d 275, 276 (Ind. 1993). Neither situation is presented here. First, Oldham made no effort to affirmatively rebut the State's assertion that he had a bad and dangerous character. Moreover, the evidence in this case, while sufficient to support the jury's verdict, was not overwhelming. The evidence showing Oldham's guilt consisted of the facts that Oldham generally fit a witness's description of the person who likely killed Brownlow, that Oldham owned a shirt like the one worn by the killer, that Oldham had been in or near Brownlow's car at some point on the night of the killing, and that Oldham was seen running from the general direction of the scene shortly after the murder. No one, however, saw Oldham kill Brownlow. The murder weapon was never recovered. Oldham's fingerprints were not found inside the car. No blood or other incriminating evidence was found on Oldham's shirt, and no other forensic evidence linking Oldham to the

**3.** While Evidence Rules 404(a) and (b) are subject to certain exceptions, the State does not argue that any of these exceptions apply in this case.

killing appears to have been discovered. And while a witness saw the man with the red and white-checkered shirt walking away from the scene of the crime, the witness who saw Oldham coming from the area where the murder occurred testified that Oldham was running. This witness did not testify that Oldham was wearing a red and white-checkered shirt. Indeed, no witness testified that they saw Oldham wearing the shirt on the night in question.

It seems that at least one juror found the evidence close, for the jury was deadlocked until one of their number was excused for health reasons. As for the remainder of the jurors, it appears all too possible that any doubts they might have had about Oldham's guilt may have been resolved against him as a result of the improper evidence purporting to show that Oldham had a bad and dangerous character and had engaged in past criminal conduct. The possibility of prejudice here is simply to great for us to ignore, and under the circumstances, we conclude that the introduction of the business cards and novelty photograph, and the State's questions about those items, subjected Oldham to fundamental error.

### 3. Guns Found in Oldham's Garage

■ Oldham also contends that the admission of photographs of two weapons found in his garage constituted reversible error. During the search of Oldham's residence, police officers found two handguns, a .38 caliber revolver and a .25 caliber semiautomatic, in the home's unattached garage. A police ballistics expert conclusively established that while Brownlow was killed with either a .38 caliber or .357 caliber firearm, neither weapon found in Oldham's garage was used to murder Brownlow. Oldham's gun possession charge therefore related to the murder weapon and not to the firearms found in his garage. Nevertheless, Oldham's coun-

sel inexplicably stipulated to the admission of photographs of the handguns into evidence. Oldham contends that the evidence was so irrelevant and unduly prejudicial that its introduction by stipulation amounted to fundamental error. We agree.

■ Evidence of weapons possessed by a defendant but not used in the crime for which the defendant is charged should generally not be introduced because the evidence is irrelevant and highly prejudicial. *See Hubbell v. State*, 754 N.E.2d 884, 890 (Ind.2001); *Lycan v. State*, 671 N.E.2d 447, 454 (Ind.Ct.App.1996). In this case, the evidence clearly showed that neither weapon found at Oldham's residence was used in the murder. Moreover, Oldham's gun possession charge related to the murder weapon, and not to the guns in question. Oldham's fingerprints were not found on the guns, and there was no evidence that they belonged to Oldham or that he even knew the weapons were located in the detached garage to which several other individuals had access. The photographs were not remotely relevant to any issue at trial, and the State makes no effort to justify their admission, save to note that Oldham belatedly sought to minimize the impact of the evidence by confirming that neither gun was the murder weapon. Aside from being totally irrelevant, this evidence must have been highly prejudicial. The clear implication from the evidence, particularly when combined with the improper bad act and character evidence discussed in the preceding section, was that Oldham was a dangerous criminal with a store of weapons at his disposal. As we discussed above, the admission of this kind of evidence to establish guilt is forbidden and ensnares fundamental rights. Again, given the fact that the State's evidence was less than overwhelming, we cannot say that the introduction of this evidence was harmless. As with the

character evidence, the possibility that Oldham was convicted in part on the basis of this irrelevant, highly prejudicial and entirely improper evidence is simply too great to ignore, and we conclude that its admission subjected Oldham to fundamental error.

### III. Prosecutorial Misconduct

#### A. Standard of Review

 Oldham argues that his convictions should be reversed because the prosecutor engaged in various acts of misconduct. In evaluating a properly preserved claim of prosecutorial misconduct, we first determine whether the prosecutor engaged in misconduct and then whether under all of the circumstances the prosecutor's misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Wright v. State*, 690 N.E.2d 1098, 1110 (Ind.1997). Whether or not the prosecutor has placed the defendant in a position of grave peril is measured by the probable persuasive effect of any misconduct on the jury's decision, and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant. *Id.* at 1111. Persuasiveness on the jury's decision is relevant because the central issue is whether a prosecutor's comment has prejudiced the jury. *Moore v. State*, 669 N.E.2d 733, 740 (Ind.1996). Similarly, extensive or repetitive comments are generally more serious than a single, isolated statement. *Id.* In addition to the persuasiveness of a comment, a court should also consider the strength of the State's case. *Id.*

 To preserve an issue of prosecutorial misconduct for appellate review, the defendant must make a timely objection to the alleged misconduct. *Carter v. State*, 738 N.E.2d 665, 677 (Ind.2000). If no objection is made, the issue is waived.

*Id.* A reviewing court may address an unpreserved claim of prosecutorial misconduct if it amounts to fundamental error. *Id.*

#### B. Analysis

##### 1. Closing Arguments

 During closing arguments, the prosecutor made the following statement: "Remember in the stipulation a .38 caliber revolver and a .25 caliber semiautomatic were found in the Defendant's garage, we don't know if those are his or not, okay, but a .38 caliber revolver was the weapon here, maybe that's the weapon of choice." (Tr. 141.) The prosecutor later told the jury that Oldham killed Brownlow as a result of "a drug deal that went bad." (Tr. 142.) The prosecutor specifically explained that Oldham got in Brownlow's car to engage in a drug transaction, but that "something happened about the drugs" and Oldham shot Brownlow from the back seat. (Tr. 142.) As to what might have happened, the prosecutor speculated that "Brownlow was trying to rip off the Defendant for the drugs and the Defendant was saying, hey, I'm going to get you if you don't pay me, you're not going to rip me off and the guy's saying forget you, boom, boom, boom." (Tr. 144.) According to the prosecutor, this sort of thing

> happens all the time, drugs and guns go together, and you get that combination you get people killed. Who would do something like this? Somebody who calls himself Rob [Goddie], even though that's not the way John Ghotti [sic] spells his name, oh, this is a different spelling, but you know who he's mimicking, John Ghotti [sic], cold blooded killer, Mafioso guy and that's who he's mimicking. He has a card, approach with extreme caution, America's Most Wanted, wanted for robbery, assault, ar-

son, jaywalking, considered armed and dangerous. Yes, August 29th, 1999, he was armed and dangerous.

(Tr. 146.) Oldham contends that these statements amounted to misconduct. We agree.

 A prosecutor commits misconduct when he asks the jury to convict a defendant for any reason other than the defendant's guilt. *Turnbow v. State*, 637 N.E.2d 1329, 1334 (Ind.Ct.App.1994). Moreover, while a prosecutor may argue both law and facts and propound conclusions based upon his or her analysis of the evidence, the prosecutor must confine closing argument to comments based only upon the evidence presented in the record. *Lambert v. State*, 743 N.E.2d 719, 734 (Ind.2001). The comments outlined above demonstrate that the prosecutor continued his efforts to obtain a conviction on the basis of Oldham's character. The prosecutor reminded the jury of the irrelevant and prejudicial handgun evidence, the admission of which we have already found to be fundamental error, and indicated that the .38 was the "weapon of choice." The prosecutor's succeeding comments confirm that the prosecutor meant that the gun was the weapon of choice of violent drug dealers. There was, however, no evidence that Oldham was a drug dealer. The only evidence regarding narcotics admitted during trial consisted of Oldham's testimony that drug dealing occurred in his neighborhood, and that Brownlow's sister Deborah found three plastic wrappers containing a white substance she believed to contain crack cocaine in the car after she retrieved it from the location where it was thoroughly searched by the police.[4] While a lay witness's opinion that she found something that looked to her like crack cocaine in someone's vehicle might be sufficient to support the inference that the owner of the vehicle possessed the item, it is not sufficient to support the inference that the cocaine belonged to Oldham, or that Oldham and Brownlow were engaged in a narcotics transaction. And Oldham's admission that drug dealing occurred in his neighborhood does not supply sufficient additional evidentiary support for the inference advanced by the State. In sum, it was inappropriate for the prosecutor to allege that Oldham was a drug dealer or that Oldham and Brownlow were engaged in a drug transaction, because those facts were not supported by the evidence. It was also misconduct for the prosecutor to attempt to obtain Oldham's conviction on the basis of the same character, bad acts, and weapons evidence we have already determined to have been erroneously admitted.

 Oldham, however, never objected to the prosecutor's statements and he has waived the issue. He claims that the prosecutor's statements subjected him to fundamental error. We have already discussed how the admission of the character, bad acts and handgun evidence constituted fundamental error, and the prosecutor's continued demands for Oldham's conviction on the basis of this same evidence only compounded the problem. In addition, we note that when a prosecutor alleges that a defendant is a drug dealer during final arguments, when drug dealing is not charged and is unsupported by the evidence, the prosecutor's misconduct subjects a defendant to such grave peril as to entitle him to reversal and to a new trial. *Flynn v. State* (1978), 177 Ind.App. 360,

4. As with Oldham's pager, the police failed to notice these unconcealed items during their thorough search of the vehicle. The items were never tested because, according to the parties' joint stipulation, Deborah Brownlow threw them away. She did not, however, throw Oldham's pager away, but promptly gave it to the police.

379 N.E.2d 548, 551. We believe that when the prosecutor's statements are considered together and in light of the prior erroneous admission of improper character and bad act evidence impermissibly used to establish Oldham's guilt, the statements must be regarded as fundamental error in a case where, as here, the evidence is not overwhelming.

### 2. Threats to Witnesses

■ Oldham also argues that the prosecutor engaged in misconduct when he asked Officer Lehn why he did not have witnesses George Brown and Latonya Jones review a photo lineup until several months after the murder. Officer Lehn testified that the witnesses "were afraid for their lives. They had been threatened...." (Tr. 104.) Oldham promptly objected, and the court ordered the remainder of Officer Lehn's testimony stricken from the record. Oldham provides no indication as to what the substance of any stricken testimony not found in the record might have been. In any event, we do not believe this constitutes misconduct, as Officer Lehn volunteered the information in response to an otherwise proper question.

■ Oldham goes on to argue that the prosecutor engaged in misconduct when he asserted during closing argument that Detective Lehn "convinced two people who saw critical evidence but were petrified to come into this courtroom and tell you the truth about what they saw." Again, however, Oldham did not object to the Prosecutor's statement, and did not request an admonishment or move for a mistrial, so the issue is waived. Oldham fails to establish how this isolated comment subjected him to such prejudice that he was deprived of his right to a fair trial, and we therefore cannot conclude that he was subjected to fundamental error. It is more likely that, under the circumstances, the prejudicial effect of the statement in question, if any, was obscured by the other improper and prejudicial evidence already discussed.

## IV. Replacement of Juror

### A. Standard of Review

■ Oldham argues that the trial court erroneously replaced an ill juror with an alternate. Trial courts have broad discretion in determining whether to replace a juror with an alternate, and we will only reverse such determinations where we find them to be arbitrary, capricious or an abuse of discretion. *Harris v. State*, 659 N.E.2d 522, 525 (Ind.1995). An abuse of discretion occurs only if the decision placed the defendant in substantial peril. *Id.*

### B. Analysis

■ As noted above, the trial court released a juror during deliberations after the juror reported being ill. Oldham contends that this was an abuse of discretion. Oldham, however, specifically agreed to the juror's release. Oldham does not argue that he was subjected to fundamental error as a result of the release of the juror, so the issue is waived.

## V. Double Jeopardy

■ Oldham finally argues that his convictions of Murder and Carrying a Handgun Without a License violated the Double Jeopardy clause of the Indiana Constitution, which provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. Two offenses are the same under the Indiana Constitution where, with respect to either the statutory elements of the crimes or the actual evidence used to convict, the essential elements of one offense

also establish the essential elements of the other. *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). According to Oldham, the same evidence was used to convict him of both offenses.

An offense is the same as another under the actual evidence test when there is a reasonable possibility that the evidence used by the fact-finder to establish the essential elements of one offense may have been used to establish the essential elements of a second challenged offense. *Richardson,* 717 N.E.2d at 53. The test is not whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense; rather, the test is whether the evidentiary facts establishing the essential elements of one offense also establish all of the elements of a second offense. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind.2002). If the evidentiary facts establishing one offense establish only one or several, but not all, of the essential elements of the second offense, there is no double jeopardy violation. *Id.*

The essential elements of Oldham's Murder conviction were that Oldham knowingly or intentionally killed Brownlow. IND.CODE § 35–42–1–1. The offense of Carrying a Handgun Without a License requires proof that the defendant carried a handgun on or about his person, away from his dwelling or business. IND. CODE § 35–47–2–1. The defendant must then establish that he had a license for the weapon. *Harris,* 716 N.E.2d at 411. To prove that Oldham killed Brownlow, the State introduced evidence that Brownlow was shot with a handgun in his car and that Oldham was the shooter. The infer-

ence that Oldham shot Brownlow with a handgun that was never recovered and then fled the scene gives rise to the additional inference that Oldham carried a handgun prior to and after the murder away from his home or business. Thus, the jury could have convicted Oldham of the gun charge by reference to evidence wholly independent of his use of the gun during the murder. As our supreme court recently stated in a similar case involving a double jeopardy challenge to murder and gun carrying convictions under the actual evidence test, "[c]arrying the gun along the street was one crime and using it was another." *Mickens v. State,* 742 N.E.2d 927, 931 (Ind.2001). Oldham has failed to demonstrate that there was a reasonable possibility that the jury used the same facts to establish both crimes, and we reject his double jeopardy claim.

### Conclusion

In conclusion, Oldham's conviction for Murder was supported by sufficient evidence of his guilt. Oldham's convictions, however, were tainted by the improper introduction of character and bad acts evidence, and irrelevant and highly prejudicial evidence regarding unrelated handguns. This error was compounded by the prosecutor's misconduct during final argument. Because the evidence in this case was close, we conclude that these errors subjected Oldham to fundamental error, and we reverse.[5] Finally, we decline to address Oldham's claim that the trial court abused its discretion by releasing the ill juror because Oldham agreed to the juror's removal and has not claimed that the juror's replacement subjected him to fun-

---

**5.** Oldham may, of course, be tried again for Brownlow's killing, because the evidence was sufficient to convict him of the original

charges despite our reversal on other grounds. *Cuto,* 709 N.E.2d at 362–63.

damental error, and we reject Oldham's double jeopardy claim.

Reversed.

MATHIAS, J., concurs.

SULLIVAN, J. concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur in the majority's reversal of Oldham's convictions and in the remand for a new trial. I write separately, however, to express a caveat with regard to the discussion under Part III.B.2., Threats to Witnesses, and to respectfully dissent from the majority's rejection of Oldham's double jeopardy claim in Part V. of the opinion.

As to the former, the majority states that Officer Lehn's gratuitous comment to the effect that two witnesses "were afraid for their lives. They had been threatened ...." was not misconduct because the comment was volunteered by Officer Lehn. The implication of the majority's conclusion is that before reversible error occurs by reason of an "evidentiary harpoon," the prejudicial testimony must be sought or invited by the prosecutor.

Such is not the case. Bad faith on the part of the prosecutor is not the key. Rather it is whether the jury's objective consideration of admissible evidence has been improperly and prejudicially tainted. It makes no difference whether the prosecutor and the witness together create the problem or whether the witness himself and upon his own initiative attempts to bolster the State's case. The prejudice to the defendant is the same. *Mack v. State,* 736 N.E.2d 801 (Ind.Ct.App.2000), *trans. denied.* *See also Baker v. State,* 506 N.E.2d 817 (Ind.1987); *White v. State,* 257 Ind. 64, 272 N.E.2d 312 (1971), and numerous cases cited therein.

As to the majority's double jeopardy analysis, I respectfully disagree that the jury could properly conclude from the evidence before them that Oldham carried an unlicensed handgun before the actual shooting and after the shooting. In this respect, the case before us differs from the facts which were present in *Guyton v. State,* 771 N.E.2d 1141 (Ind.2002) and in *Mickens v. State,* 742 N.E.2d 927, 931 (Ind.2001) ("Carrying the gun along the street was one crime and using it was another."). The only evidence to reflect that Oldham carried a handgun was the evidence that Brownlow was killed by a shot or shots from a handgun. Therefore, the evidence of his carrying a handgun was the same evidence which permitted the jury to find that he shot a handgun while seated in the back seat of the automobile.

Absent some evidence from which the jury could determine that Oldham had the firearm before entering the car and/or after departing the car, it is impossible to justify the dual convictions on the basis that Oldham committed separate and distinct offenses. While it is possible, perhaps even likely, that Oldham had the gun before entering the car, the facts do not preclude a different scenario. If Oldham, wearing gloves, entered the rear passenger compartment of the car and picked up a handgun which was lying on the seat, fired the gun into the driver and then put the gun back on the seat, I do not believe we would countenance a conviction for murder *and* for carrying a handgun without a license. In my estimation, while the first scenario is the more probable of the two, it was not established beyond a reasonable doubt. Accordingly, under the *Richardson* test, there is a reasonable possibility that the jury looked to the same evidentiary facts to establish each crime. *See Guyton,* 771 N.E.2d at 1153 (Boehm, J., concurring).

Be that as it may, it is clear that the absence of a license is not an element of

the carrying offense. *Alexander v. State,* 768 N.E.2d 971, 977 (Ind.Ct.App.2002), *trans denied.* It is the burden of the defendant to plead and prove the affirmative defense of the existence of a license. *Id.* Therefore, when the State proved, albeit by circumstantial evidence, that Oldham possessed the gun in the vehicle when he shot and killed Brownlow, that essential element for the crime of murder, i.e. the act of shooting, established all of the elements of the offense of carrying the handgun. See *Hampton v. State,* 719 N.E.2d 803, 809 (Ind.1999), in which the unanimous Supreme Court, applying *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), reversed a conviction upon double jeopardy grounds because "[t]he same evidence that supported the murder conviction, the act of stabbing, may have also been used to convict Defendant of robbery as a Class A felony." (emphasis supplied.)

*Hampton* is analogous to the case before us. There is a reasonable possibility, if not probability, that the act of shooting the handgun essential to the proof of the murder charge, was used to convict Oldham of carrying the handgun without a license.

As held in *Alexander v. State,* 772 N.E.2d 476, 478 (Ind.Ct.App.2002), *opinion upon rehearing, trans. denied:*

"Both of the offenses being analyzed for double jeopardy purposes must be viewed in the context of the other offense. If the evidentiary facts establishing any one or more elements of one of the challenged offenses establishes the essential elements of the second challenged offense, double jeopardy considerations prohibit multiple convictions."

For these reasons, I would reverse the carrying a handgun conviction and remand solely for retrial upon the murder charge.