Mirtha McHENRY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0303–CR–251.

Court of Appeals of Indiana.

Oct. 27, 2003.

Thomas J. O'Brien, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

On occasion, the State will miss the mark and fail to present sufficient evidence to prove a defendant's guilt beyond a reasonable doubt. This is such a case.

Mirtha McHenry appeals her convictions for Forgery,[1] a class C felony, and Theft,[2] a class D felony. Specifically, McHenry argues that the trial court committed reversible error when it denied her request to dismiss two jurors for cause. Moreover, McHenry claims that the trial court erred in admitting into evidence a surveillance videotape that showed her activities. Finally, McHenry challenges the sufficiency of the evidence. Because we conclude that the State presented insufficient evidence to convict McHenry of the charged

offenses, we reverse and do not address the remaining issues.

*FACTS*[3]

The facts most favorable to the verdict reveal that McHenry was a teller at Union Planters Bank in Lafayette. As part of her duties, she was authorized to provide cash to customers from their bank accounts but could not dispense more than $3,000 without a supervisor's approval. On September 1, 2000, after the bank had closed, McHenry asked lead teller Judy Coffman for authorization to withdraw $6,500 for customer Charles Landes. She showed Coffman a signed withdrawal slip as was required by the bank's policy. Coffman then authorized the transaction.

On October 2, 2000, Charles Landes filed an affidavit of forgery, which stated that an unauthorized withdrawal of $6,500 had been made from his account. Detective Cecil Johnson of the Lafayette Police Department was assigned to investigate the unauthorized withdrawal. A bank employee provided Detective Johnson with the actual withdrawal slip allegedly signed by Landes. Because the withdrawal slip was stamped 4:44 P.M., he viewed a videotape from a bank surveillance camera that was filming at that time. Detective Johnson noticed that the surveillance video showed no customers at McHenry's teller window at 4:44 p.m. Because Landes's driver's license number was listed on the withdrawal slip, Detective Johnson contacted the Indiana Bureau of Motor Vehicles (BMV) to verify that the number listed actually belonged to Landes. The BMV stated that no record of the number on the withdrawal slip existed and that

---

1. Ind.Code § 35–43–5–2.

2. I.C. § 35–43–4–2.

3. We heard oral argument at Vincennes University on October 2, 2003. We thank the students, faculty, and staff for their hospitality and commend counsel on their able presentations.

Landes's license number was different than that found on the withdrawal slip.

On October 9, 2000, Detective Johnson asked McHenry to come to the Lafayette Police Department for an interview and McHenry consented. During the interview, McHenry stated that she filled out the withdrawal slip information but that Landes signed the document. McHenry stated that the person who signed the slip had an Indiana driver's license.

Based on this information, the State charged McHenry with forgery and theft. Police officers arrested McHenry on November 6, 2000. When a jury trial commenced on February 11, 2003, the State introduced the surveillance tape into evidence as a business record. McHenry objected, arguing that "a different foundation needs to be laid before this type of registry is admitted into evidence." Tr. p. 147. The trial court overruled McHenry's objection and allowed the tape to be played for the jury. Twenty-seven minutes of the videotape—from 4:24 p.m. to 4:51 p.m.—were shown to the jury. This time period encompassed the 4:44 p.m. time stamped on the back of the Landes withdrawal slip. The videotape showed that no customers approached McHenry's teller window at this time. However, on cross-examination Detective Johnson admitted that the teller time stamp was lagging nearly three minutes behind the videotape timer and that tellers may stamp slips at times when the bank is less busy. Tr. p. 156–59. Moreover, a bank employee testified that it was not uncommon to log transactions sometime after they occurred. Tr. 190–91.

Janice Hainje, the bank branch manager, testified that McHenry made two different inquiries into Landes's account to verify his account balance some days before the forgery occurred. Appellant's App. p. 70–72. However, Hainje admitted that Kelly Reed, a financial service representative, had also made an inquiry to verify Landes's balance and that customers occasionally would phone the bank and request information about their accounts. Appellant's App. p. 71–72.

At the conclusion of the trial, the jury found McHenry guilty on all counts. The trial court sentenced McHenry to six years confinement for forgery and two years for theft. The sentences were to be served concurrently, for an executed sentence of six years. Furthermore, the trial court ordered three years of McHenry's sentenced suspended. McHenry now appeals.

## DISCUSSION AND DECISION

McHenry claims that the State presented insufficient evidence to convict her of forgery and theft. Specifically, McHenry contends that the convictions must be set aside because the State failed to present evidence that she did anything other than fill out the items on the withdrawal slip. Moreover, McHenry argues that the State proffered no evidence that McHenry knew that the signature on the withdrawal slip did not belong to Landes.

In addressing McHenry's claim, we first note that in reviewing the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of witnesses. *Haviland v. State,* 677 N.E.2d 509, 516 (Ind.1997). We look only at the evidence supporting the verdict and the reasonable inferences therefrom. *Id.* Moreover, our supreme court has held that the identity of the defendant may be shown by circumstantial evidence. *Joyner v. State,* 736 N.E.2d 232, 245 (Ind.2000).

However, substantive evidence of probative value is necessary to sustain a conviction, *Gray v. State,* 786 N.E.2d 804, 807 (Ind.Ct.App.2003), and speculation alone is insufficient. *Cockrell v. State,* 743 N.E.2d 799, 807 (Ind.Ct.App.2001). Fur-

thermore, "a defendant's mere presence at the crime scene, with the opportunity to commit these crimes, is not a sufficient basis on which to support a conviction." *Oldham v. State*, 779 N.E.2d 1162, 1169 (Ind.Ct.App.2002).

To convict McHenry of forgery, the State had to show that (1) McHenry; (2) with intent to defraud; (3) made or uttered a written instrument; (4) in such a manner that it purported to have been made by another person. Ind.Code § 35–43–5–2. To convict McHenry of theft, the State had to show that (1) McHenry; (2) knowingly or intentionally; (3) exerted unauthorized control; (4) over property of another person; (5) with intent to deprive the other person of any part of its value or use. I.C. § 35–43–4–2.

At trial, only the identity of the person who withdrew the funds was at issue, as McHenry admitted that a $6,500 transaction occurred. McHenry alleged that a person had approached her at the teller's window and requested a $6,500 withdrawal from Landes's account. Tr. p. 225. Moreover, McHenry admitted to filling out the withdrawal slip itself but not the signature line. Tr. p. 225. No evidence was offered by the State to contradict this contention.

Detective Johnson testified that when he viewed the surveillance video and searched for the time period that would show McHenry receiving the withdrawal slip from Landes, McHenry's teller window had no customers. Tr. p. 152. However, evidence demonstrated that the slip may have been received earlier and only stamped at 4:44 p.m. Tr. p. 156–59. While Hainje, the bank branch manager, testified that McHenry made two different inquiries into Landes's account to verify his account balance some days before the forgery occurred, she also noted that the inquiries may have been precipitated by a phonecall request. From our view of the record, we can only conclude that the State merely established that McHenry had the opportunity to commit the charged offenses. To be sure, the evidence failed to establish beyond a reasonable doubt that McHenry was guilty of either forgery or theft. Thus, her convictions must be reversed. Doing otherwise would render a showing of opportunity alone sufficient for a conviction.

Reversed and remanded with instructions that McHenry be discharged.

NAJAM, J., and BAILEY, J., concur.