## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 03 2020, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Casey Carpenter,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 3, 2020<br><br>Court of Appeals Case No.<br>20A-CR-594<br><br>Appeal from the Harrison Superior Court<br><br>The Honorable Joseph L. Claypool, Judge<br><br>Trial Court Cause No.<br>31D01-1811-F3-833 |

**Altice, Judge.**

## Case Summary

Following a jury trial, Casey Carpenter was convicted of Level 3 felony aggravated battery and Class A misdemeanor interference with reporting a crime. On appeal, Carpenter contends that the trial court committed fundamental error by permitting certain testimony of a police officer.

We affirm.

## Facts & Procedural History

In October 2018, Heather Culver was pregnant and in an on and off relationship with Carpenter, staying either with him, at a women's shelter, or at the Super 8 Motel throughout the month. Carpenter and Culver both knew Michael Dell, who often provided rides and help to Culver and had known her since she was about thirteen years old. Dell was much older, around seventy years old in 2018, and struggled with walking since a stroke in 2003.

On or about October 23, 2018, Culver sought assistance from Dell. He drove her to the Super 8 Motel and spent the night with her. Dell made some sexual advances toward Culver that night that were beyond what he had done in the past. During this encounter, Culver allowed him to take pictures of her bare breasts with his cellphone.

[5] Thereafter, Carpenter spoke with Culver and visited her at the motel. Upon learning of Culver's encounter with Dell, Carpenter called 9-1-1 in the early evening of October 25 and indicated that he would like police to retrieve Dell's phone, which contained the pictures of Culver, and arrest Dell. Carpenter suggested that Dell used fear to obtain the pictures and possibly drugged her. He also asked for an ambulance so that Culver could be mentally evaluated. The 9-1-1 dispatcher asked to talk with Culver, who acknowledged that Dell put her in "an uncomfortable position" but that she "really d[id]n't have anything to tell the police." *Transcript Vol. 3* at 37. Carpenter became aggravated during the call and left the motel.

[6] While Carpenter was gone, Officer Jason Harrell and other officers conducted a welfare check at the motel. He spoke with Culver, who seemed distraught. She consented to a search of her motel room, which turned up no drugs. The officers then left Culver alone in her room.

[7] At some point that night, Carpenter returned to the motel and picked up Culver in his truck. Carpenter called and informed Dell that they were coming to his residence to retrieve something. Dell greeted them and, once inside, Carpenter asked for Dell's cellphone. Dell handed it over and then sat in his recliner as Carpenter looked at the phone. Carpenter became angry when he could not find the pictures of Culver. Carpenter then twisted and broke the phone as he came toward Dell yelling. Dell claimed that he had deleted the pictures and also stated, "She's not your wife, you're not married." *Transcript Vol. 2* at 189. As Dell began to rise from his chair, Carpenter punched him twice in the head

and once in the gut. Dell briefly lost consciousness and then awoke to blood running down his face. He went to the bathroom to clean up, and Carpenter followed behind, saying that it did not hurt and warning that if Dell called the police, he would come back and shoot Dell. Carpenter and Culver then left together.

[8] Dell's pain from his injuries increased over time, and he could not see out of his left eye. As a result, he went to the ER at the local county hospital on October 27 and was transferred by ambulance to a trauma hospital. Dell reported that he had not sought medical care earlier out of fear. The ER nurse contacted police regarding the assault. Officer Thomas Yoder spoke with Dell at the ER before the ambulance transport. Dell was reluctant to offer information and indicated that if he identified his assailant, he would be killed. He eventually acknowledged that Carpenter attacked him but refused to press charges. Officer Yoder made a report but did not submit it to the prosecutor.

[9] About two weeks later, upon learning that Dell's injuries were more significant than originally believed – possible permanent loss of sight in his left eye, Officer Yoder notified Dell that he needed to move forward with the case. Thereafter, Officer Yoder spoke with Carpenter, who acknowledged that he "smoked [Dell] in the head several times." *Id*. at 155. Carpenter indicated that he did so because he was upset about the photos taken of Culver and the possible involvement of drugs. Carpenter also indicated that he thought Dell might have had a gun during the confrontation at Dell's house. After speaking with

Carpenter, Officer Yoder contacted Dell, who indicated that there was no reason Carpenter would have felt threatened during the encounter.

[10] On November 19, 2018, the State charged Carpenter with Level 3 felony aggravated battery, Level 6 felony intimidation, and Class A misdemeanor interference with reporting a crime. The State later added a habitual offender enhancement. Before trial, the intimidation count was dismissed.

[11] Carpenter's jury trial was held on January 21 and 22, 2020. Dell, Culver, Officers Yoder and Harrell, and the ER nurse testified for the State. Carpenter testified on his own behalf, acknowledging that he punched Dell multiple times after confronting him about the pictures and breaking Dell's phone. Carpenter, more than twenty-five years younger than Dell, claimed that he did so in self-defense. Carpenter testified:

> Dell got so mad that he told [Culver] to get the blank out of his house before I blow your blank head off. And he was sitting in a recliner, and he grabbed the arms and pulled himself forward, and reached over to his left. And when he started to come up, that's when I threw the phone and I jumped over and I hit Michael Dell…. I hit him first in the left eye. Michael Dell tried to stand up out of his chair, and when he reached down, I didn't know if he was trying to stand up or reach for a weapon a second time, so I hit him in the chest, knocked him right back down. While he was trying to grab ahold of my arms, he threw his hands back down. So I hit him again in the other eye.

*Transcript Vol. 3* at 29-30. Dell, however, testified that he does not own a gun, and Culver testified that there was no threat to Carpenter. On the other hand,

she indicated that Dell was the one who appeared afraid and that she feared for his safety as well.

[12] The jury found Carpenter guilty of aggravated battery and interference with reporting a crime. Carpenter then admitted that he was a habitual offender. On February 10, 2020, the trial court sentenced him to an aggregate term of thirty-six years in prison. Carpenter now appeals. Additional information will be provided below as needed.

## Discussion & Decision

[13] Carpenter claims that Officer Harrell improperly testified about trying to get Culver into a battered woman's shelter on the night of October 25, 2018. He argues that the evidence was irrelevant and unfairly prejudicial and that it constituted improper character evidence or evidence of prior bad acts under Ind. Evidence Rule 404.[1] Carpenter acknowledges that he did not object to the testimony at trial on any of these grounds but claims that its admission constituted fundamental error because the it "saddled [him] with the impossible

---

[1] Evid. R. 404 provides in relevant part:

**(a) Character Evidence.**

(1) *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait….

**b) Crimes, Wrongs, or Other Acts.**

(1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character….

burden of proving that he did not conform to his character trait as a violent person who had committed prior acts of battery." *Appellant's Brief* at 23.

[14] It is well established that the fundamental error exception to the contemporaneous objection rule is exceedingly narrow and applies only where "the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). Our Supreme Court has emphasized that the exception is available only in egregious circumstances where the claimed error made a fair trial impossible or constituted clearly blatant violations of basic and elementary principles of due process. *Id.*; *see also Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002) (exception applies only where the actual or potential harm cannot be denied and the error is so prejudicial to the rights of the defendant as to make a fair trial impossible), *trans. denied*. We do not find such egregious circumstances in this case.

[15] Here, the following occurred during Officer Harrell's direct testimony, when he was answering questions related to responding to a second dispatch to the motel on October 25, 2018:[2]

---

[2] Immediately prior to this, Officer Harrell testified regarding the first dispatch in which Carpenter had called 9-1-1 resulting in the officers performing a welfare check on Culver and finding no drugs in her motel room.

Q       At this time do you recall who the caller was that initiated the call?

A       I don't remember exactly.  I do remember speaking to [Culver].  I don't know who called that in the second call.  It may have been [Culver] herself.

****

Q       Okay.  So at this point we are at the Super 8 Motel for the second time on October 25th, 2018?  Once you get there, you said that you spoke with Ms. Culver?

A       Correct.  I spoke with her at the front desk.

****

Q       Did Ms. Culver express any concerns regarding Mr. Dell?

A       I believe she stated he had her phone.

Q       Mr. Dell had her phone?

A       No, not Mr. Dell.

Q       Okay.  At any point did you give Ms. Culver information on how to get into a battered woman's shelter?

A       I did.

Q       And why did you do that?

A       She expressed some concerns and she was no longer able to stay at the hotel.  I was trying to get her assistance to go somewhere.  So I made contact with this shelter in Salem in an attempt to get her a bed.

---

Aside from being the same day, the timing of the second dispatch is not entirely clear, though it could be reasonably inferred that it occurred after the incident at Dell's home.

Q     And did she go there?

A     No.  She declined to go.

Q     Did she want to go anywhere else that evening?

A     She did.

Q     Where did she want to go?

A     Mr. Dell's residence.

*Transcript Vol. 2* at 162-63.  The prosecutor then turned the questioning to a welfare check at Dell's residence in November, which led officers to pursuing the charges against Carpenter.

[16]     On appeal, Carpenter complains, in the context of fundamental error, that the above testimony was used by the State to improperly paint him as a dangerous person who battered his pregnant girlfriend and, thus, was the type of person that would beat an old man.  Specifically, he argues:

> The erroneous admission of this negative character evidence and this implied evidence of prior misconduct against his pregnant girlfriend negated the due process presumption of innocence that forms the bedrock of our criminal justice system. Indeed, it forced Casey to defend, not only against the charged conduct, but also against the inflammatory misconduct that the trial court should have excluded. Thus, the admission of this evidence made a fair trial impossible.

*Appellant's Brief* at 23.

[17]     We fail to see how the challenged testimony here says much if anything about Carpenter, as there were no references made to Carpenter during this portion of

the testimony and no indication that he had battered Culver. Rather, we view the testimony as indicating that Culver did not report any concerns related to Dell and, in fact, she wanted to go to his residence. In other words, she was not afraid of him. Further, Officer Harrell simply indicated that he contacted the shelter to find somewhere Culver could go, as she could not stay at the motel. He did not testify that Culver had been battered by Carpenter or anyone else.

[18] Even if the testimony constituted inadmissible character evidence, we cannot say that this passing and vague reference during a two-day trial made a fair trial impossible. *See Halliburton v. State*, 1 N.E.3d 670, 683 n.7 (Ind. 2013) ("Assuming for the sake of argument that evidence of the burglary was inadmissible character evidence … he still has failed to show how introduction of the evidence amounted to fundamental error. The evidence supporting the jury's guilty of murder verdict was overwhelming"). Moreover, any error was at most harmless. Carpenter's credibility as a witness was properly impeached under Indiana Evid. Rule 609(a) with his admission that he had prior convictions for burglary and rape. Thus, there was evidence before the jury regarding his dangerousness aside from any potential implication that he battered his pregnant girlfriend. Additionally, there was no dispute in the evidence that Carpenter went to Dell's residence, confronted him about the pictures, broke Dell's phone in anger, yelled at him, and punched him multiple times. Carpenter's defense was simply that he thought Dell might be armed with a gun as Dell sat in the recliner. The evidence, however, overwhelmingly establishes that Dell was not armed and that Carpenter was the initial aggressor

inside Dell's home.  And even if believed, Carpenter's testimony did not establish that he acted in self-defense.  There is no merit to Carpenter's claim of fundamental error.

[19]    Judgment affirmed.


Riley, J. and May, J., concur.