James BEST, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1-1080A292.

Court of Appeals of Indiana,
First District.

March 31, 1981.

Rehearing Denied May 27, 1981.

Brent Westerfeld, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

Defendant-appellant James Best (Best) was convicted by the Morgan Superior Court, without a jury, of child molesting under Ind. Code 35–42–4–3(b) (Supp. 1979), from which conviction he appeals.

We affirm.

## ISSUES

Best raises two issues for review which can be stated as follows:

I. Whether the newly discovered evidence consisting of affidavits by the State's primary witness that she had perjured herself was sufficient as a matter of law to mandate a new trial; and

II. Whether the evidence of specific intent was sufficient to sustain the conviction.

## DISCUSSION AND DECISION

*Issue I. Newly discovered evidence*

The sole evidence connecting Best to the offense came from the victim, K. B., age 10, who was the natural grandchild of Best and his wife, Irene, and whom they had adopted in infancy. K. B. had resided with James and Irene Best from the time of adoption until the incident giving rise to the criminal prosecution. K. B. testified at the trial that on November 12, 1978, in the family home at approximately 7:00 a. m., while Irene was at work in a restaurant, Best fondled K. B's genitalia, and upon his encouragement, she fondled his.

The motion to correct errors alleged, as newly discovered evidence, the recantation by K. B. of her trial testimony, and attached an affidavit executed by K. B. and an affidavit executed by Irene Best in support thereof. K. B.'s affidavit stated that the events reported at the trial were not true, and she so testified because she was afraid the Welfare Department would take her away from home if she did not stick to her story. Irene Best's affidavit stated that K. B. had informed her sometime prior to the trial that the events did not occur, and that her reason for not revealing this information to her husband, to his attorney, or to the court was that she was afraid that K. B. would be taken away again.

The trial court, in denying the motion to correct errors, observed:

"That the newly discovered evidence . . . is not sufficient in the court's discretion and under the guidelines of the *Sanders* case to warrant the party a new trial. This finding is made after a careful review of the evidence . . . given at trial, the weight that a reasonable trier of fact might give the impeaching evidence in light of all the facts and circumstances of this case as well as its probable impact on a new trial in light of those facts and circumstances. The court cannot ignore the facts that this evidence came to 'light' only after the court ordered an executed sentence in this case, the effect of which, without question, would be of considerable impact on the economic welfare of the victim and the welfare of the defendant, as well as the other minor children in the home."

The law relating to newly discovered evidence as a ground for a new trial was summarized in *Sanders v. State*, (1977) Ind. App., 370 N.E.2d 966, as follows:

"The newly discovered evidence relied upon by Sanders consists of three letters written by Tester and addressed to the Vanderburgh County Sheriff, prosecuting attorney, and the Governor of Indiana. In these letters, Tester stated that he had committed perjury in Sanders' trial, that Sanders was not guilty of the acts charged, and that the only reason he testified against Sanders was that he thought Sanders was going to testify against him. He further admitted to acts of sodomy against Hall, although he had denied this during Sanders' trial.

An application for new trial made on the basis of newly discovered evidence must be supported by an affidavit or affidavits which make a showing of fact that: (1) the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867. Further, an admission of perjury in and of itself does not mandate a new trial. *Rector v. State* (1976), Ind. [264 Ind. 78], 339 N.E.2d 551. The trial judge, in deciding whether or not to grant a new trial, may consider the weight a reasonable trier of fact might give that evidence and may also evaluate its probable impact on the new trial in light of the facts and circumstances of the original trial. *Emerson v. State, supra.* The granting of a new trial on the basis of newly discovered evidence is a matter which rests in the sound discretion of the trial court, and that deci-

sion will be overturned on appeal only for an abuse of that discretion.

Although the Supreme Court reversed in a similar situation in *Key v. State* (1956), 235 Ind. 172, 132 N.E.2d 143, we feel that the case at bar is distinguishable on its facts. In *Key*, the witness told the jailer, before trial, that he intended to commit perjury and falsely implicate the defendant because he had had dates with the witness's wife. In this case, Tester did not recant his testimony until two months after trial. Further, Tester's testimony at trial is strongly corroborated in most details by the statement and affidavit of Hall. In addition, there is nothing to indicate that Tester's recantation is worthy of any credit. The trial court may well have inferred that Tester's change in testimony resulted from experiences during his two month imprisonment following trial.

A motion for a new trial on the basis of newly discovered evidence should be received with great caution, and the alleged new evidence should be carefully scrutinized. *Fultz v. State* (1968), 250 Ind. 43, 233 N.E.2d 243. On the facts of this case, we cannot say that Tester's letters are particularly worthy of credit nor that the trial court abused its discretion in denying Sanders a new trial."

370 N.E.2d at 968. *Sanders, supra*, was, as here, a case where the sole witness connecting defendant to the crime recanted his testimony after the trial.

The rationale for the rule which enjoins upon the court to receive such evidence with caution and disfavor was stated in *Morrison v. Carey*, (1891) 129 Ind. 277, 28 N.E. 697, as follows:

" 'Motions of this kind ought to be received with great caution, because there are few cases tried in which something new may not be hunted up, and because it tends very much to the introduction of perjury, to admit new evidence after the party has lost the verdict, has had an opportunity of discovering the points both of his adversary's strength and his own weakness.' [Citations omitted.]

' . . . The temptations are so strong to make a favorable showing, after a defeat in an angry and bitter controversy involving considerable interest, and the circumstances that the testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strictest showing to be made of diligence, and all other facts necessary to give effect to the claim.' "

129 Ind. at 278–79, 28 N.E. 697.

It is necessary, in light of the discretionary power vested in the trial court in determining a motion for a new trial based on newly discovered evidence, to examine into the proceeding. At the very commencement of K. B.'s testimony, counsel for Best conducted an exhaustive preliminary examination of K. B., the purpose of which was to demonstrate that K. B. was testifying under duress. That examination brought forth the following facts. Prior to the November 12 incident, K. B. was in contact with her sister, Brenda, who was much older than K. B. Brenda had once lived in the family home, but she did not get along with Jim and Irene Best. After the November 12 incident, Irene called Brenda and Brenda met with K. B. at school, together with representatives of the Welfare Department, school officials, and the police. Brenda had told K. B. prior to the trial to stick to her story and the reason K. B. continued to stick to the story was she was afraid of Brenda. She was also a little afraid of what the court or what the people she had come in contact with (Welfare case workers) might do if she told a different story. Defense counsel then objected to K. B.'s testimony *in toto* assigning as his reason duress.

The trial court, at this point, conducted a further elaborate examination of the child relative to duress and the importance of telling the truth. The court constantly reassured her that no harm would come to her and implored her to tell the truth; K. B. promised to tell the truth whatever it might be. K. B. informed the court that Brenda told her to relate that Best had made her perform on him an act of fellatio, but that

was not true, though she once said it was. She stated that the Welfare representative had told her that she could not see her father, and she was afraid that if she did she would have to go back to the foster home. She stated that she wanted her dad back home. She declared that she was not afraid of the people at the mental health clinic or the welfare representative, but was a little afraid of defense counsel.

Irene Best's testimony disclosed that after K. B. told her of the incident, she always took K. B. with her, and never left her alone with Best. She was asked whether she believed K. B., and she answered that she did not know what to believe, and that it was about 50–50. No word was said about K. B. telling her before the trial that her version of the event was false.

■ Best argues that the cases which have held the recanted testimony insufficient to mandate a new trial as a matter of law are cases wherein there was other corroborating testimony. He points out that the two cases where a reversal was dictated, *Key v. State*, (1956) 235 Ind. 172, 132 N.E.2d 143, and *Dennis v. State*, (1885) 103 Ind. 142, 2 N.E. 349, no corroboration was present. Neither of those cases, nor any case we have found, turns on the matter of corroboration, though it was a factual consideration. In *Sanders*, there was no testimony corroborative of that of the principal witness. In a more recent case, *Tilton v. State*, (1981) Ind.App., 416 N.E.2d 870, the fact that principal identification witnesses were compromised by post-trial statements and depositions did not, as a matter of law, dictate a reversal. We are of the opinion that the presence or absence of corroboration is not in and of itself controlling. In support of this position, we look again to the reasons for the rule as stated in *Morrison, supra*. Any contrary rule would make every judgment which was supported by a single witness dependent upon the caprice of that witness, who, once he had departed from the protection of the court, would be subjected to whatever seductions, compulsions, or guile that an unscrupulous litigant might choose to employ to rescue his ill fated cause.

■ Best argues that a demonstration, at a new trial, of K. B.'s statement that her earlier testimony was perjured would probably cause a different result, or stated another way, in the absence of her testimony there would be no basis for conviction. We point out, however, that the offered new testimony is impeachment testimony, that is, an out-of-court declaration contrary to her in-court testimony. While K. B's testimony might be impeached at a new trial, it would also be subject to rehabilitation, and, as stated in *Rector v. State*, (1976) 264 Ind. 78, 339 N.E.2d 557, "[t]he impact of the impeachment would not necessarily be destructive of the State's case." 264 Ind. at 84, 339 N.E.2d 551.

■ The trial testimony and the affidavits no doubt presented an issue of K. B.'s credibility to the trial judge. There is nothing in the record to support the belief shared by Irene Best and K. B. that the Welfare Department or the court would again place K. B. in a foster home if she did not "stick to her story." Yet, Best would have us believe that it was reasonable for Irene Best to *assume* that the Welfare Department, the prosecuting attorney, or the court would insist on her condoning perjury by K. B., thus sending her innocent husband to prison, and punish her by taking her child away if she did not. The trial court had before it a record that disclosed that after the November 12 episode, she told the story to Irene Best. Thereafter K. B. repeated the story to her sister, to a school official, to welfare case workers, to policemen, to the prosecuting attorney, to her examining physician, and to the Morgan Circuit Court in the wardship hearing. She was thoroughly questioned at the trial by defense counsel, and by the court on the matter of fear, truth and duress. Despite the fact that she was beset on all sides by people pulling and tugging, her story remained substantially unchanged.

While the affidavit of K. B. states that she did not tell the court the truth because she was afraid the Welfare Department would take her away from her home if she

did not stick to her story, it in no way disposes of the questions of why she told it in the first place. The affidavit was apparently prepared out of the pale of the protection of the court, and out of the presence of any one representing the State. It is unknown what pressures may have been brought to bear to influence her to recant her testimony. Certainly she was only a child, and one can infer, insomuch as she did not really want to harm Best, the realization of what had occurred was a factor.

The trial court had all these matters before it when it ruled on the motion. He was in the position to see and hear the witnesses and determine their credibility. We cannot say that he abused his discretion.

*Issue II. Specific intent*

 Best claims there is insufficient evidence of specific intent "to arouse or to satisfy the sexual desires of either the child or the older person ... under Ind. Code 35–42–4–3(b)" to support the finding and judgment of the court. In *Tapp v. State,* (1971) 256 Ind. 422, 269 N.E.2d 367, the court held that evidence of defendant having a child feel his "privates," and defendant feeling her "privates," was sufficient to support a conviction of touching with intent to satisfy sexual desires. The court may infer from the State's presentation of evidence that the touching did occur, and the intent did exist without a direct showing of both elements. *McDonald v. State,* (1970) 254 Ind. 645, 261 N.E.2d 852. Where specific intent is required, it may be inferred from all of the circumstances. *Smith v. State,* (1979) Ind., 386 N.E.2d 1193.

We hold that the trial court could properly infer from all of the circumstances in this case the specific intent to satisfy sexual desires was present.

For the above reasons, this cause is affirmed.

Affirmed.

RATLIFF, J., and BUCHANAN, C. J. (participating by designation), concur.