**Mario MARTINEZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0905–CR–289.

Court of Appeals of Indiana.

Dec. 14, 2009.

Transfer Denied Feb. 25, 2010.

Jeffrey A. Lockwood, Lockwood, Williams & McDole, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Mario Martinez ap-

peals his convictions for Child Molesting,[1] a class A felony, and two counts of Child Molesting,[2] a class C felony. Martinez argues that the trial court should have granted his motion to correct error and ordered a new trial after W.M., the twelve-year-old victim, recanted her allegations after trial. Finding that the trial court did not err by determining that the recantation was not worthy of credit, we affirm.

## FACTS

On March 18, 2008, Frances Hicks, a facilitator for the Indianapolis Police Department's Body Safety Program, was teaching a Body Safety Program at Westlake Elementary. The next day, Hicks returned to the school to meet with students who had indicated that they had experienced possible molestation. She spoke with ten-year-old W.M., who was crying and so upset that Hicks ended the conversation and told W.M. she would speak with her later. Later that day, Hicks's partner, Jessica Mederios, spoke with W.M., who was crying, shaking, and nervous. W.M. told Mederios that she had been repeatedly molested by Martinez, her uncle. Mederios filed a report with the child abuse hotline and called for a police officer.

On March 20, 2008, an Indianapolis Police Sergeant scheduled a child forensic interview of W.M., who is Hispanic, at the Child Advocacy Center, where there are Spanish-speaking interviewers and interpreters. During the interview, W.M., who was very emotional, told the interviewer that Martinez had repeatedly molested her.

On March 31, 2008, the State charged Martinez with three counts of class A felo-

ny child molesting and three counts of class C felony child molesting. On January 26, 2009, a two-day jury trial commenced.

At trial, W.M. testified that when she was seven or eight years old, she lived with Martinez and his family for approximately two months while her parents visited Mexico. W.M. slept in the same bed as Martinez and his daughter. During this period of time, Martinez touched W.M.'s "private part" with his hands more than once and also touched her "private part" with his "private part," which hurt. Tr. Vol. I p. 9–15. Martinez touched W.M. underneath her clothes and would pull down his zipper and take off W.M.'s pants and underwear. The last time it happened, W.M. was playing by herself in the bedroom, when Martinez entered the room, pushed her onto the bed, pulled down her pants, and touched her. After W.M. reported the abuse, she was examined by Dr. Ralph Hicks. Dr. Hicks found no physical evidence of abuse but testified that the lack of corroboration is not unusual in a case where there is delayed disclosure and the child's body is undergoing changes because of puberty.

At the close of the State's case, Martinez moved for judgment on the evidence on all counts. The trial court granted the motion as to two of the counts of class A felony child molesting and one of the counts of class C felony child molesting, but denied it as to the remaining charges. On January 27, 2009, the jury returned a guilty verdict on the remaining count of class A felony child molesting and two counts of class C felony child molesting.

On February 17, 2009, before the trial court had sentenced Martinez, W.M., by

---

1. Ind.Code § 35–42–4–3.

2. *Id.*

private counsel, filed a motion to intervene and set aside the jury verdict. Attached to the motion was a deposition of W.M. in which she stated that after the trial, she told her parents that Martinez had not, in fact, molested her. Also attached was a deposition of W.M.'s mother, Virginia Flores, stating that W.M. had told her that she had lied about the molestation. The depositions were taken by W.M.'s attorney, with an interpreter who was not court certified, and neither the State nor Martinez's counsel were notified to be present. Finding that W.M. had no standing, the court denied the motion the same day.

On February 18, 2009, the trial court held a hearing during which the prosecutor stated that although her office had been in contact with Flores after the trial, the State had never been notified that W.M. was recanting her testimony until W.M. filed the motion the day before. When the prosecutor attempted to speak with W.M. and Flores before the hearing, she was told that they were represented by counsel and she could not speak with them. The trial court was "astonished" that depositions were taken in the case without the prosecutor being notified and found the situation "totally inappropriate, if not unconscionable . . . [and] unethical." Tr. Vol II p. 10. The trial court ordered that there was to be no further contact between Martinez's family members and W.M. and that W.M.'s private counsel was to have no further contact with W.M. or Flores. Subsequently, W.M. reiterated that she had lied about the abuse in an informal interview with Martinez's counsel and the prosecutor.

On February 19, 2009, Martinez filed a motion to correct error, alleging that W.M.'s recantation was newly discovered evidence that warranted a new trial.

Martinez attached the transcripts of the depositions to the motion, calling them "affidavits." Appellant's App. p. 65. In her deposition, W.M. stated that following Martinez's trial, she overheard her parents saying that her uncle would go to prison for fifty years. She then told her parents that she had lied about her uncle molesting her because she was mad at him for pushing or hitting her approximately one year before she reported the abuse. On March 12, 2009, the State filed its response, attaching a transcript of the March 27, 2008, interview of W.M. and a transcript of a pretrial deposition of W.M. taken by Martinez's counsel. Both of these documents contained statements made by W.M. that her uncle had touched her inappropriately and that Martinez was not strict with her and had never hit, spanked, or yelled at her.

At the March 18, 2009, hearing on the motion to correct error, Martinez offered a transcript of the informal interviews of W.M. and Flores by the prosecutor and Martinez's counsel. In these interviews, W.M. again stated that she had lied about her uncle touching her because she was mad at him based on an incident that had occurred when she "was much younger," when her uncle had hit her because, while he was asleep, she stuck a hair in his nose. Tr. Vol VI p. 154. Flores stated that she was concerned that she and W.M.'s father, Martinez's brother, would get divorced over this because he had not supported her or W.M. during the pendency of the case. She was worried that she might have to return to Mexico.

On April 24, 2009, the trial court denied the motion to correct error, finding and concluding as follows:

7. On February 18, 2009, counsel for the Defendant filed his Presentence

Memorandum for consideration by the Court, containing letters of support written by thirteen family members and seven personal friends, as well as several pages containing 123 signatures of persons supporting the Defendant.

### CONCLUSIONS OF LAW

\* \* \*

4. In the present case, [W.M.] stated in the taped statement taken by [her attorney] on February 16, 2009, that she had accused her uncle ... of molesting her because her uncle had hit or pushed her two years before ..., and that she was afraid to retract her statement because she was scared that something bad would happen to her family, such as being taken away from her mom and dad. She stated that she decided to come forward and tell the truth when she overheard her parents say that her uncle was going to go to prison for fifty years.... [T]his statement was taken "... out of the pale of the protection of the court, and out of the presence of anyone representing the State." [*Best v. State*, 418 N.E.2d 316, 319 (Ind.Ct. App.1981).] ...

5. As in the *Best* case, "... it is unknown what pressures may have been brought to bear to influence [W.M.] to recant her testimony. Certainly she was only a child, and one can infer, insomuch as she did not really want to harm [her uncle], the realization of what had occurred was a factor." *Id.* at 319. One can also infer, based on the mother's statement[s] ..., that the equilibrium of not only the family unit, but also that of the extended family, was compromised over the long pretrial period, and that [W.M.] was not immune from her mother's feelings of isolation and rejection within her marriage, extended family, and Hispanic community. The record discloses that [W.M.] revealed the molest in a note following a good touch-bad touch program at school, that she told the story to a victim advocate, to a forensic child interviewer, to welfare case workers, to the prosecuting attorney, and to defense counsel prior to trial. She told her mother that what she had said about her uncle was true. She was thoroughly questioned in front of the jury by both the prosecutor and defense counsel, and, from beginning to end, her story remained substantially the same.... [W.M.'s] explanation for lying, that she was angry at her uncle because of an incident that had occurred close to two years before, is simply not worth of belief.

6. Since the trial, [W.M.] and her mother, although living in a close knit Hispanic community, are in fact isolated within that community. During the trial and first sentencing hearing, the court room was full of friends and family of the Defendant. Looking now at the number of friends and family who have written in support of the Defendant, defending his innocence, since the trial, the only apparent support for [W.M.] and her mother lies in representatives of the State.

7. The jury heard the evidence and was in the best position to see and hear the victim and evaluate her credibility.

Appellant's App. p. 124–28. After denying the motion, the trial court sentenced Martinez to twenty years for class A felony child molesting and to four years each for the two counts of class C felony child molesting, all to run concurrently. Martinez now appeals.

### DISCUSSION AND DECISION

Martinez's sole argument on appeal is that the trial court erred by deny-

ing his motion to correct error and request for a new trial based on newly discovered evidence. The denial of a motion to correct error based on newly discovered evidence will only be reversed for an abuse of discretion. *Webster v. State*, 699 N.E.2d 266, 269 (Ind.1988). Thus, we will reverse only if the judgment goes against the logic and effect of the facts or the trial court has misinterpreted the law. *McVey v. State*, 863 N.E.2d 434, 445 (Ind.Ct.App.2007), *trans. denied.* We will give the trial court's decision substantial deference. *Id.*

■■ A recantation or admission of perjury does not necessarily mandate the grant of a new trial. *Strain v. State*, 560 N.E.2d 1272, 1274 (Ind.Ct.App.1990). Instead, there is a nine-part test for determining whether to grant a new trial based on newly discovered evidence:

> A motion to correct error based upon the ground of newly discovered evidence must be supported by one or more affidavits which must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) *that the evidence is worthy of credit;* (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. In ruling whether a piece of evidence would produce a different result, the judge may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial of the case. On appeal, the denial of a motion predicated on newly discovered evidence is considered a discretionary ruling and is reviewed deferentially.

*Wilson v. State*, 677 N.E.2d 586, 588 (Ind. Ct.App.1997) (quoting *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind.1991)) (emphasis added) (internal citation omitted). We must analyze these nine factors with care, as "the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Carter v. State*, 738 N.E.2d 665, 671 (Ind.2000). The defendant bears the burden of showing that the newly discovered evidence meets the standard for a new trial. *Bradford v. State*, 675 N.E.2d 296, 302 (Ind.1996).

■■ Here, the only factor at issue is whether the newly discovered evidence— W.M.'s recantation—is worthy of credit. Evaluation of evidence and witness credibility is firmly within the province of the trial court. *See Webster*, 699 N.E.2d at 269 (holding that "when ruling on a motion for a new trial based on newly discovered evidence the trial court must assess the credibility of any proffered new evidence"); *see also McVey*, 863 N.E.2d at 446 (holding that determining whether the new evidence is credible is "a factual determination to be made by the trial judge who has the opportunity to see and hear the witness testify").

Martinez first argues that the State is required to designate *new* evidence in the form of affidavits to counter W.M.'s recantation, but we cannot agree. The evidence designated by the State consisted of W.M.'s pretrial interview and pretrial deposition, which is sufficient to counter her post-trial version of events. *See Best v. State*, 418 N.E.2d 316, 319 (Ind.Ct.App. 1981) (finding that recantation affidavits and victim's trial testimony "no doubt presented an issue of [the victim's] credibility to the trial judge"). Martinez directs our attention to no authority requiring the des-

ignation of new evidence to counter a post-trial recantation, and we can find none. Therefore, we find that the State designated sufficient evidence to permit the trial court to evaluate both versions of events.

In denying Martinez's motion, the trial court relied heavily on *Best*, in which the victim, K.B., was a ten-year-old girl who testified at trial that Best, her grandfather, had molested her. Best was convicted of child molesting, and the sole evidence supporting his conviction was K.B.'s testimony. After trial, Best filed a motion to correct error, attaching affidavits executed by K.B. and her grandmother, stating that K.B. had lied at trial. This court denied Best's motion, reasoning as follows:

> The trial court had before it a record that disclosed that after the November 12, episode, [K.B.] told the story to [her grandmother]. Thereafter K.B. repeated the story to her sister, to a school official, to welfare case workers, to policemen, to the prosecuting attorney, to her examining physician, and to the Morgan Circuit Court in the wardship hearing. She was thoroughly questioned at the trial by defense counsel, and by the court on the matter of fear, truth and duress. Despite the fact that she was beset on all sides by people pulling and tugging, her story remained substantially unchanged.
>
> ... The [recantation] affidavit was apparently prepared out of the pale of the protection of the court, and out of the presence of any one representing the State. It is unknown what pressures may have been brought to bear to influence her to recant her testimony. Certainly she was only a child, and one can infer, insomuch as she did not really want to harm Best, the realization of what had occurred was a factor.

> The trial court had all these matters before it when it ruled on the motion. He was in the position to see and hear the witnesses and determine their credibility. We cannot say that he abused his discretion.

*Id.* at 319–20.

Here, as in *Best* W.M.'s recantation first occurred in a private deposition that occurred beyond the protection of the court and out of the presence of anyone representing the State. Furthermore, as in *Best* the trial court observed that W.M. told her story to a victim advocate, a forensic child interviewer, welfare caseworkers, the prosecuting attorney, and defense counsel before trial. She was thoroughly questioned at trial by the prosecutor and cross-examined by Martinez's attorney. Through it all, her story remained substantially the same. She also endured an intimate physical examination by a doctor. The trial court's conclusion that W.M.'s explanation of the reason for her alleged lies—that she was angry with her uncle for an incident that had occurred two years earlier—was incredible, especially given the embarrassment and hardships she endured before and during trial.

W.M. never wavered in her allegations until after Martinez was convicted, when she overheard her parents saying that Martinez could serve fifty years in jail. Additionally, W.M.'s mother was experiencing significant social isolation and feared that her marriage would fall apart as a result of the trial and conviction. We find that it was reasonable for the trial court to infer that W.M. observed and internalized her parents' worries.

Under these circumstances, we cannot say that the trial court abused its discretion by finding that W.M.'s recantation was

not worthy of credit. *See State v. McCraney,* 719 N.E.2d 1187, 1191 (Ind.1999) (holding that "[i]t is not within an appellate court's province to replace the trial court's assessment of credibility with its own"). Inasmuch as it is Martinez's burden to establish all nine elements of the aforementioned test and he has failed to carry that burden, the trial court did not err by denying his motion for a new trial based on this evidence.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.