**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 18 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID BARBEE,                                    )
                                                 )
    Appellant-Defendant,                        )
                                                 )
        vs.                                )     No. 49A04-0907-CR-370
                                                 )
STATE OF INDIANA,                                )
                                                 )
    Appellee-Plaintiff.                         )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-0706-MR-113806

**September 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

David Barbee appeals the denial of his motion to correct error, which challenged his convictions of murder[1] and Class C felony carrying a handgun without a license.[2] He presents three issues for review, which we restate as:

1. Whether the trial court should have granted Barbee's second Motion to Correct Error based on newly discovered evidence in the form of a recantation of testimony from one of the State's witnesses;

2. Whether comments in closing argument were fundamental error when the prosecutor implied that a witness testified as she did because she was afraid of Barbee; and

3. Whether the trial court committed fundamental error by instructing the jury on voluntary manslaughter.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 15, 2007, David Barbee shot and killed David Kimbrough while Kimbrough sat on Letroy Burks' porch. On the porch at the time of the shooting were Burks, Kimbrough's girlfriend Brandi Arnwine, Kimbrough's sister and Burks's girlfriend Lakeisha Kimbrough, Burks' cousin Brandon Tyler, and Anniya Willis and her young daughter.

Barbee lived nearby, and he had driven past Burks' porch three times while Kimbrough and his companions were present. Sometime later, Barbee approached Burks'

---

[1] Ind. Code § 35-42-1-1.
[2] Ind. Code § 35-47-2-1.

porch, used vulgarity, and stated "what did I tell you about coming out south," (Tr. at 110), and "you think I'm playing?" (*Id*. at 112.) Barbee's comments appeared to be directed at Tyler. Barbee then pulled out a gun and fired a shot, which killed Kimbrough.

Anthony Hampton, who was walking next to Burks' house at the time of the shooting, testified he saw a man on the porch raise the gun and point it at Barbee, who was standing in the street. The gun appeared to misfire, and then Barbee raised and fired his gun. Barbee walked up the porch ramp and pointed the gun at Arnwine and Burks. Burks told Barbee "Man, you tripping, man. You shot my dude for nothing." (*Id*. at 164.) Barbee looked at Kimbrough lying in the grass, looked back at Burks, and then walked away.

Barbee was charged with and convicted of murder and Class C felony carrying a handgun without a license. Barbee filed a Motion to Correct Error and Set Aside Judgment, which was denied. Barbee filed his second Motion to Correct Error, arguing *inter alia* he was entitled to a new trial because Arnwine had recanted her earlier testimony that she did not see Tyler with a gun. That motion was also denied.

## DISCUSSION AND DECISION

1. Newly Discovered Evidence

Barbee claims the trial court should have granted his motion to correct error based on Arnwine's new testimony that Tyler had a gun and showed it to Barbee. The denial of a motion to correct error based on newly discovered evidence will be reversed only for an abuse of discretion. *Martinez v. State*, 917 N.E.2d 1242, 1247 (Ind. Ct. App. 2009), *trans. denied*. Thus, we will reverse only if the decision goes against the logic and effect of the

3

facts or the trial court has misinterpreted the law. *Id*. We give the trial court's decision

substantial deference. *Id*.

> A recantation or admission of perjury does not necessarily mandate the grant of a new trial. Instead, there is a nine-part test for determining whether to grant a new trial based on newly discovered evidence[.] A motion to correct error based upon the ground of newly discovered evidence must be supported by one or more affidavits which must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. In ruling whether a piece of evidence would produce a different result, the judge may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial of the case. On appeal, the denial of a motion predicated on newly discovered evidence is considered a discretionary ruling and is reviewed deferentially. We must analyze these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized. The defendant bears the burden of showing that the newly discovered evidence meets the standard for a new trial.

*Id.* (citations and quotations omitted).

The trial court's order denying Barbee's motion did not indicate a basis for its

decision. However, we may affirm a trial court's ruling if it is sustainable on any legal basis

in the record, even though it was not the reason enunciated by the trial court. *Scott v. State*,

883 N.E.2d 147, 152 (Ind. Ct. App. 2008). Barbee's trial court would have been within its

discretion in deciding the newly discovered evidence was neither worthy of credit nor likely

to produce a different result at a new trial.

In *Allen v. State*, 716 N.E.2d 449, 451 (Ind. 1999), Allen and the victim were being

4

transported by Allen's sister and the victim's girlfriend. Allen was seated behind the victim when he shot him. *Id*. Allen's sister testified that she "saw 'something black' come from the back of the car and go to the [victim's head] . . . and then heard a shot and [the victim] fell over into her lap." *Id*. at 452. Allen moved to correct error, offering his sister's affidavit stating she "did not tell the whole truth" in her prior statements. *Id*. at 455. She previously said Allen and the victim had not fought, but in her affidavit she recanted that statement and further stated she saw the victim "reach down as if to grab something immediately before the shooting." *Id*. She said she disposed of a box cutter that was near the victim. *Id*.

Our Supreme Court determined the trial court did not abuse its discretion in denying the motion for a new trial; the new evidence was not worthy of credit, in part, because it conflicted with the witness' pretrial statements and sworn testimony and with other evidence. *Id*. at 456. The trial court was within its discretion to conclude the "changed testimony was not likely to produce a different result at a new trial because "the State would thoroughly impeach her testimony based on the very different version of events given in her pretrial statements to police and her prior sworn trial testimony" along with the physical evidence that contradicted her new account. *Id*.

Here, as in *Allen*, the trial court could have found Arnwine's new testimony not worthy of credit, and we therefore cannot say the trial court abused its discretion. Before trial, Arnwine told police that she did not know if Tyler had a gun. She recanted that testimony and indicated she saw a gun in Tyler's waistband. At trial, Arnwine testified Barbee "pulled out a gun, and it accidentally went off," (Tr. at 324), and the shot "hit the

5

ground, and ricocheted from the ground, and it hit [Kimbrough] in the side." (*Id.* at 345.) A police officer testified he found no evidence of bullet strikes at the crime scene indicative of a ricochet. Arnwine's testimony was equivocal and varied, is contradicted by other eyewitness accounts, and her version of events was unsupported by physical evidence. As Arnwine's new testimony would be impeached by the State, contradicted by two witnesses, and uncorroborated by physical evidence, the trial court was within its discretion to conclude Arnwine's changed testimony was not likely to produce a different result at a new trial, and we therefore cannot say the trial court abused its discretion in denying Barbee's second Motion to Correct Error based on newly discovered evidence.

2. Prosecutorial Misconduct

Barbee next asserts the prosecutor, in closing argument, improperly suggested Arnwine testified as she did because she was afraid of Barbee:

> But the important part of what [Arnwine] said is exactly this, okay: Nobody else on that porch had a gun. Nobody else on that porch had a gun. Okay? [Arnwine] says that. She says that.
> And you know, the important thing about her is obviously she's scared. It's why she's trying to – not to say – you know, point to him and say that's who did this. Okay? All right?

(Tr. at 520.)

Barbee did not object to the comment, so that allegation of error is waived on appeal unless the error was fundamental. *Oldham v. State*, 779 N.E.2d 1162, 1175 (Ind. Ct. App. 2002), *trans. denied.* It was not.

On review of a claim of prosecutorial misconduct, we determine "(1) whether the

6

prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected." *Coleman v. State*, 946 N.E.2d 1160, 1166 (Ind. 2011). Prosecutorial misconduct is determined by reference to case law and the Rules of Professional Conduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). The gravity of the peril is assessed by looking to the probable persuasive effect the misconduct had on the jury, not the degree of impropriety of the misconduct. *Id.*

When, as here, the misconduct is challenged as fundamental error, the defendant must establish both that misconduct occurred and that it was a fundamental error. *Coleman*, 946 N.E.2d at 1166. Error is fundamental when it so blatantly violates basic elementary principles that its harm or potential for harm is inescapable, and the prejudicial effect of the violation is such that the defendant's right to a fair trial is eviscerated. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). The defendant carries a heavy burden in demonstrating fundamental error. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012).

Barbee contends the prosecutor made arguments not supported by the evidence in suggesting Arnwine testified favorably for Barbee because she was afraid of him. He also contends the prosecutor inaccurately stated that Arnwine testified "[n]obody else on that porch had a gun."[3] (Tr. at 520.) He is correct.

---

[3] The Statement of Facts the State provides in its brief recounts at length and in detail the incident that led to the shooting and Barbee's involvement in it, but it is devoid of any facts relevant to the issues Barbee presents on appeal regarding newly-discovered evidence, the prosecutor's statements, or the jury instructions. We remind the State that our rules require a statement of facts section to describe in narrative form "the facts *relevant to the issues presented for review*" supported by citations to the record. Ind. Appellate Rule 46(A)(6) (emphasis added); *Galvan v. State*, 877 N.E.2d 213, 215 (Ind. Ct. App. 2007).

A prosecutor may argue both law and facts and propound conclusions based on his or her analysis of the evidence. *Oldham*, 779 N.E.2d at 1179. But comments made during closing argument must be based on evidence in the record. *Id*. The prosecutor's statement that Arnwine testified favorably to Barbee because she was afraid of him was improper because it was not based on evidence.

Barbee notes "there was no evidence that Barbee had threatened anyone with respect to coming to court to testify," (Appellant's Br. at 11), and the State does not direct us to any such evidence. Instead, the State characterizes the record as "awash with properly admitted evidence from which any reasonable fact finder could infer that a testifying witness may feel scared or intimidated." (Br. of Appellee at 17.) It then says "[t]he evidence showed [Barbee] executed a person peaceably socializing on a friend's porch over a territorial edict he had issued. Such is ample reason for any witness to experience fear about testifying to the identity of the perpetrator." (*Id*.)

We decline the State's invitation to hold that any witness to a violent crime is necessarily always afraid to testify to the identity of the perpetrator and therefore is always subject, for that reason alone, to a prosecutor's attack on her credibility. That Arnwine was an eyewitness does not, by itself, amount to "evidence from which any reasonable fact finder could infer" she was "scared or intimidated." (*Id*.) We therefore agree with Barbee that there was no evidence in the record to support the prosecutor's statement and it was improper for that reason.

Barbee next notes the prosecutor's statement during closing argument that Arnwine

8

said "[n]obody else on that porch had a gun." (Tr. at 520.) That statement was a mischaracterization of Arnwine's testimony. Her testimony was that she was "not for sure" whether anyone did, (*id.* at 328), and she "didn't see anybody else with a gun out there" (*Id.* at 329.) She acknowledged she had said in a deposition that one of the people on the porch, Tyler, didn't have a gun, but she testified at trial that she made that statement because she "didn't see one." (*Id.* at 335.) The prosecutor's statement during closing argument that Arnwine said "[n]obody else on that porch had a gun" was improper because it was not supported by the record.

While both of the prosecutor's challenged statements were improper, we cannot find fundamental error. In *Cooper v. State*, 854 N.E.2d 831, 837 (Ind. 2006), the prosecutor said, "You can tell the kind of person Curtis Cooper is . . . a back shooter and a woman beater," and then said, "From what we know today, we would have predicted that, [Cooper's] behavior was predictable. Look at how he behaved." Our Supreme Court found these statements

> at least approached if not crossed the line of improper commentary. . . . [T]hey suggest that Cooper more likely than not committed murder in this case based on his past behavior. This Court has held that "[i]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt.

*Id.*

Still, the error was not fundamental. Cooper claimed he killed the victim in self-defense, but the jury heard evidence he fired multiple shots at the victim and shot his victim in the back when she did nothing to provoke the attack. "It strains credulity to believe that

9

the jury found Cooper guilty of murder for any reason other than the evidence introduced at trial." *Id*. at 838. Any harm done by the prosecutor's remark was *de minimis*, not substantial, and Cooper was not denied fundamental due process. *Id*. Nor was Barbee, as there was ample additional evidence of his guilt presented at trial.

3.      Jury Instruction

The trial court should not have instructed the jury on voluntary manslaughter, but the error was not fundamental.

Ind. Code § 35-42-1-3 provides:

(a) A person who knowingly or intentionally:
(1) kills another human being

* ** **

while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.
(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

A voluntary manslaughter instruction is sustainable if the record contains any appreciable evidence of sudden heat. *Roberson v. State*, 982 N.E.2d 452, 456 (Ind. Ct. App. 2013). But if there is no serious evidentiary dispute over sudden heat, it is error for a trial court to instruct a jury on voluntary manslaughter in addition to murder. *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). The State "agrees that this record would not support a finding of sudden heat," (Br. of Appellee at 21), and our review of the record reveals none. Instructing the jury on voluntary manslaughter was therefore error.

10

However, the error was not fundamental.[4] To preserve a claim of error in giving a jury instruction, trial counsel must timely object and clearly identify the "claimed objectionable matter and the grounds for the objection." *Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998). Failure to timely object waives this issue for review. *Harper v. State*, 963 N.E.2d 653, 660 (Ind. Ct. App. 2012), *clarified on reh'g on other grounds*, 968 N.E.2d 843 (Ind. Ct. App. 2012), *trans. denied*. Barbee did not object, but the instruction was not fundamental error.

The trial court commits fundamental error when it commits an error so prejudicial the defendant is precluded from receiving a fair trial. *Id.* Such error occurs only when a defendant's substantial rights are affected; otherwise, it is harmless. *Lee v. State*, 964 N.E.2d 859, 863 (Ind. Ct. App. 2012), *trans. denied*. Barbee argues the instruction was fundamental error because no evidence supported it and it deprived him of his all-or-nothing trial strategy.

While the instruction should not have been given, we cannot agree Barbee had an "all-or-nothing" trial strategy of which he was deprived. At closing, Barbee's counsel explained to the jury what the State would have to prove for Barbee to be guilty of murder. But counsel then addressed alternatives to finding Barbee guilty of murder. Counsel told the jury it would be instructed about reckless homicide, and what "reckless" means. Counsel then explained "how you have to evaluate the different charges, because you're going to have murder,

---

[4]  The State's argument on this issue is premised in large part on invited error, in the form of Barbee's "strategic decision to ask the jury to find sudden heat." (Br. of Appellee at 21.) We acknowledge Barbee might have invited the error, but decline to hold an error cannot be "fundamental" just because it might have been "invited." Our Supreme Court has addressed a defendant's fundamental error argument despite invited error. *See Roach v. State*, 695 N.E.2d 934, 941-42 (Ind. 1998), *reh'g granted on other grounds*, 711 N.E.2d 1237 (Ind. 1999) (noting certain challenged testimony was given in response to a question by Roach's own counsel, but then addressing whether there was fundamental error).

voluntary manslaughter, reckless homicide, and then, of course, not guilty." (Tr. at 487.) Counsel went on to say: "If they [sic] prove [the elements of murder] to you, you're still not done, because then you have to consider whether or not Mr. Barbee acted in sudden heat . . . . The State has the burden of disproving that beyond a reasonable doubt. (*Id.*)

We cannot say that the trial court deprived Barbee of his trial strategy or deprived Barbee of a substantial right. The error in instructing the jury on voluntary manslaughter was therefore not fundamental.

## CONCLUSION

The trial court did not err in denying Barbee's second Motion to Correct Error based on newly discovered evidence, as Barbee did not show the nine-part test was satisfied. Barbee is not entitled to reversal based on prosecutorial misconduct because the misconduct was not fundamental error. While it was error to instruct the jury on voluntary manslaughter, the error was not fundamental. Accordingly, we affirm.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.

12