## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2015, 9:04 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jesse R. Poag
Newburgh, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen M. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Malaysia D. Lockhart, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 26, 2015 <br><br> Court of Appeals Case No. <br> 82A01-1408-CR-369 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli E. Fink, Judge <br><br> The Honorable Robert R. Aylsworth, Special Judge <br><br> Case No. 82C01-1306-FB-677 |

**Crone, Judge.**

# Case Summary

[1] Malaysia D. Lockhart appeals her convictions for two counts of class B felony unlawful possession of a firearm by a serious violent felon. Lockhart claims that, during closing argument, the prosecutor committed misconduct that put her in a position of grave peril that amounted to fundamental error. Lockhart also claims that the trial court erred in denying her motion to correct error alleging newly discovered evidence. Concluding that no misconduct or fundamental error occurred and also concluding that the trial court properly denied Lockhart's motion to correct error, we affirm.

# Facts and Procedural History

[2] On May 23, 2013, Evansville police officers assigned to a federal Drug Enforcement Administration task force went to Lockhart's home to speak with her regarding an ongoing narcotics investigation. Lockhart shared her home with her brother, Bryant, and Christina Aguilar. When the officers arrived, Lockhart was outside mowing the lawn. Aguilar was also outside. Bryant was inside the home. Detectives Cliff Simpson and Heath Stewart spoke to Lockhart and asked her for consent to search the home. Detective Todd Seibert was also at the scene assisting with the investigation. Lockhart consented to a search of the residence and signed a written consent to search form. Lockhart told the detectives that she had a gun inside the residence and explained that it was for protection. After the detectives read Lockhart her Miranda rights, she told them that the gun was in her bedroom under the mattress.

[3] Lockhart and Aguilar accompanied the detectives into the bedroom and pointed to the mattress. The detectives lifted the mattress and located a .40 caliber Glock handgun. The detectives also found a magazine for that gun in a gun box inside Lockhart's bedroom. Lockhart told the detectives that Bryant had given her the handgun for protection. A further search of the residence revealed a loaded Tek-9 handgun and a magazine on the bed in Bryant's bedroom. Bryant told the detectives that he had purchased both guns and that he had given the Glock to Lockhart for protection. Bryant stated that he knew that Lockhart was not permitted to legally possess any guns due to her status as a serious violent felon.

[4] The State charged Lockhart with two counts of class B felony unlawful possession of a firearm by a serious violent felon. During the jury trial, Detectives Simpson and Seibert both testified regarding Lockhart's inculpatory statements and their subsequent discovery of the two guns. The State chose not to call Detective Stewart as a witness. During closing argument, Lockhart argued that Detectives Simpson's and Seibert's testimony regarding her statements was not credible and reminded the jury that a third detective who was "supposedly" at the scene and would have been present for those same statements did not testify. Tr. at 280. During rebuttal, the State responded to Lockhart's closing argument by saying, "The fact that Detective Stewart isn't here and is unavailable for this trial is not inconsistent with the testimony, it just means he's not here, but Cliff Simpson heard it, Detective Seibert heard her admission…." *Id*. at 290. Lockhart did not object to the prosecutor's rebuttal

argument or move to admonish the jury. Thereafter, the jury found Lockhart guilty as charged.

[5] Lockhart filed a motion to correct error alleging newly discovered evidence. Specifically, Lockhart argued that Detective Stewart was available to be called as a witness by the State but that the State had chosen not to call him because he was being investigated for altering a report in an unrelated case and the State knew his credibility might be impeached on that basis. Following a hearing, the trial court denied the motion to correct error. Specifically, the trial court concluded that there is no indication that the State failed to reveal any exculpatory evidence directly related to Lockhart's case. This appeal ensued.

## Discussion and Decision

## Section 1 – The prosecutor did not commit misconduct that put Lockhart in a position of grave peril and the trial court did not commit fundamental error in failing to intervene.

[6] Lockhart claims that the prosecutor committed misconduct during rebuttal closing argument in using the term "unavailable" when referring to the fact that the State did not call Detective Stewart as a witness. Lockhart argues that Detective Stewart was not truly "unavailable" in a legal sense, and therefore the prosecutor's statement was false and placed her in a position of grave peril.[1]

---

[1] We note that Lockhart relies on the legal definition of witness unavailability for purposes of the Confrontation Clause of the Sixth Amendment to the U.S. Constitution which prohibits the admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable

In reviewing a claim of prosecutorial misconduct, we determine first whether misconduct occurred, and second whether the misconduct placed the defendant in a position of grave peril to which he or she would not have been otherwise subjected. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). When the alleged misconduct concerns the prosecutor's arguments to the jury, we measure the gravity of the peril by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

To preserve a claim of prosecutorial misconduct, the defendant must request an admonishment at the time the alleged misconduct occurs and, if further relief is desired, move for a mistrial. *Id.* Where, as here, a defendant has failed to preserve his or her claim but wishes to raise it on appeal, the defendant must establish not only the grounds of prosecutorial misconduct but must also establish that the misconduct constituted fundamental error. *Id.* at 667-68. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors were so prejudicial to his or her rights as to "make a fair trial impossible." *Id.* at 668. "In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because the alleged errors (a) 'constitute clearly blatant violations of basic and

---

and the defendant had a prior opportunity to cross-examine the person. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). With regard to such unavailability, our supreme court has stated that "[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial." *Garner v. State*, 777 N.E.2d 721, 724 (Ind. 2002).

elementary principles of due process' and (b) 'present an undeniable and substantial potential for harm.'" *Id*. (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). Our task is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury and to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id*

[9] We are unpersuaded by Lockhart's suggestion that the prosecutor's mere use of the term "unavailable" to explain Detective Stewart's absence from trial placed her in a position of grave peril. The prosecutor used his rebuttal to respond to defense counsel's closing argument, in which defense counsel stated that although Detective Stewart was "supposedly" at the scene of Lockhart's crimes, he did not appear at trial and corroborate the testimony of the other two detectives. Tr. at 280. Defense counsel was clearly implying that the State did not call Detective Stewart as a witness because his testimony would not be consistent with the other officers. The prosecutor simply explained, "The fact that Detective Stewart isn't here and is unavailable for this trial is not inconsistent with the testimony, it just means he is not here…." *Id*. at 290.

[10] "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Whether Detective Stewart was truly "unavailable" in a legal sense, or just not called as a witness, is of no moment, as it is unlikely that the jury attributed any significance to the use of that term to explain his absence. Rather, it is more likely that the jury accepted

that two of the three detectives present at the scene corroborated that Lockhart made certain statements and that it was unnecessary for the State to present the testimony of yet a third witness regarding those same statements. The jurors were clearly instructed that it was their province to judge the credibility of the evidence presented, including the testimony of the witnesses, and nothing that the prosecutor said during closing argument detracted from that instruction.

[11] We are unconvinced that the prosecutor committed misconduct that placed Lockhart in a position of grave peril. Thus, we cannot say that any error occurred that deprived Lockhart of a fair trial, much less fundamental error.

## Section 2 – The trial court did not abuse its discretion in denying Lockhart's motion to correct error.

[12] Lockhart next challenges the trial court's denial of her motion to correct error alleging newly discovered evidence. A trial court's order denying a motion to correct error on the basis of newly discovered evidence is reviewed on appeal for an abuse of discretion. *Martinez v. State*, 917 N.E.2d 1242, 1247 (Ind. Ct. App. 2009), *trans. denied* (2010). We give the trial court's decision substantial deference and reverse only if the trial court's judgment is contrary to the logic and effect of the facts, or if the court has misinterpreted the law. *Id.* Our supreme court has enunciated the following factors to consider upon review of such a ruling:

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due

diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006). We analyze these nine factors "with care, as '[t]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000) (quoting *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987)). The burden of showing that all nine requirements are met rests with the defendant. *Taylor*, 840 N.E.2d at 330.

In ruling on whether the alleged newly discovered evidence would probably produce a different result, "the trial court may properly consider the weight that a reasonable trier of fact would give it and while so doing may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Bunch v. State*, 964 N.E.2d 274, 296 (Ind. Ct. App. 2012) (citation omitted), *trans. denied.* "[T]he defendant must raise a strong presumption that the result of any subsequent trial in all probability would be different." *Id.* Indeed, a sufficient probability of a different result is present "when the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.*

[13] Here, Lockhart asserts that the newly discovered evidence is her post-trial discovery of the reason Detective Stewart was not called as a witness by the State. However, the reason for his absence from trial is not evidence, and we fail to see how this information satisfies any of the nine factors, particularly that

the information would probably produce a different result on retrial. As noted by the trial court, this is not a case where the State allegedly failed to disclose exculpatory evidence directly related to this case. Lockhart essentially complains that she was deprived of the ability to impeach the credibility of a witness who did not testify. Her complaint rings hollow. We agree with the trial court that, even had Detective Stewart been called as a witness or if he were to be called as a witness on retrial, his act of misconduct in an unrelated case is not admissible for impeachment purposes. *See Manuel v. State*, 971 N.E.2d 1262, 1266 (Ind. Ct. App. 2012) (citing Ind. Evidence Rule 608(b) that witness may not be impeached by specific acts of misconduct that have not resulted in criminal convictions). Moreover, Detective Stewart's testimony would have been corroborative and cumulative of the testimony of the two other detectives, and in all probability would not produce a different result on retrial regardless of what Lockhart perceives to be Detective Stewart's credibility issues. The trial court did not abuse its discretion in denying Lockhart's motion to correct error on the basis of newly discovered evidence. We therefore affirm her convictions.

[14] Affirmed.

Friedlander, J., and Kirsch, J., concur.